THE UNITED STATES, PLAINTIFFS, *v.* PETER MARIGOLD.

On the 3d of March, 1825, Congress passed an act (4 Stat. at Large, 121) providing for the punishment of persons who shall bring into the United States, with intent to pass, any false, forged, or counterfeited coin; and also for the punishment of persons who shall pass, utter, publish, or sell any such false, forged, or counterfeited coin.

Congress had the constitutional power to pass this law. Under the power to regulate commerce, Congress can exclude, either partially or wholly, any subject falling within the legitimate sphere of commercial regulation; and under the power to coin money and regulate the value thereof, Congress can protect the creature and object of that power.

The doctrines asserted by this court in the case of Fox *v.* The State of Ohio (5 Howard, 433) are not inconsistent with that now maintained.

THIS case came up from the Circuit Court of the United States for the Northern District of New York, upon a certificate of division in opinion between the judges thereof.

The record in the case is so very short, that the whole of it may be inserted.

" UNITED STATES OF AMERICA,
      *Northern District of New York, ss.*

" At a Circuit Court of the United States, begun and held at Albany, for the Northern District of New York, in the Second Circuit, on the third Tuesday of October, in the year of our Lord 1848, and in the seventy-third year of American Independence.

" Present, the Honorable Samuel Nelson and Alfred Conkling, Esquires.

     " THE UNITED STATES OF AMERICA *v.* PETER MARIGOLD.

      " *State of the Pleadings.*

" This is an indictment against the defendant, charging him, under the twentieth section of the act of Congress entitled ' An act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes,' approved March 3, 1825, —

" 1st. With having brought into the United States, from a foreign place, with intent to pass, utter, publish, and sell as true, certain false, forged, and counterfeit coins; made, forged, and counterfeited in the resemblance and similitude of certain gold and silver coins of the United States, coined at the mint, he knowing the same to be false, forged, and counterfeit, and intending thereby to defraud divers persons unknown.

" 2d. With having uttered, published, and passed such counterfeit coins, with intent to defraud, &c.

" To this indictment the defendant demurs, and George W. Clinton, attorney of the United States for the said district, who prosecutes in this behalf, joins in demurrer.

" This cause coming on to be argued at this term, the following questions occurred : —

" 1st. Whether Congress, under and by the Constitution, had power and authority to enact so much of the said twentieth section of the said act as relates to bringing into the United States counterfeit coins.

" 2d. Whether Congress, under and by virtue of the Constitution, had power to enact so much of the said twentieth section as relates to uttering, publishing, passing, and selling of the counterfeit coins therein specified.

" On which said several questions the opinions of the judges were opposed.

" Whereupon, on motion of the said attorney, prosecuting for the United States in this behalf, that the points on which the disagreement has happened may, during the term, be stated under the direction of the judges, and certified under the seal of the court to the Supreme Court, to be finally decided, — it is ordered, that the foregoing state of the pleadings and statement of the points upon which the disagreement has happened, which is made under the direction of the judges, be certified, according to the request of the attorney, prosecuting as aforesaid, and the law in that case made and provided."

The case came up to this court upon this certificate.

The clauses in the Constitution of the United States and the act of Congress were the following.

By the fifth and sixth clauses of the eighth section of the first article of the Constitution, it is declared that Congress shall have power, among other things, " to coin money, regulate the value thereof and of foreign coin, and fix the standard of weights and measures " ; " to provide for the punishment of counterfeiting the securities and current coin of the United States." 1 Statutes at Large, 14.

By the twentieth section of the Crimes Act of 3d March, 1825 (4 Statutes at Large, 121), it is enacted, " That if any person or persons shall falsely make, forge, or counterfeit, or cause or procure to be falsely made, forged, or counterfeited, or willingly aid or assist in falsely making, forging, or counterfeiting, any coin in the resemblance or similitude of the gold or silver coin which has been, or hereafter may be, coined at the mint of the United States, or in the resemblance or similitude of any foreign gold or silver coin which by law now is, or here-

after may be made, current in the United States; or shall pass, utter, publish, or sell, or attempt to pass, utter, publish, or sell, or bring into the United States from any foreign place with intent to pass, utter, publish, or sell, as true, any such false, forged, or counterfeited coin, knowing the same to be false, forged, or counterfeited, with intent to defraud any body politic or corporate, or any other person or persons whatsoever; every person so offending shall be deemed guilty of felony, and shall on conviction thereof be punished by fine not exceeding five thousand dollars, and by imprisonment and confinement to hard labor not exceeding ten years, according to the aggravation of the offence."

The case was argued by *Mr. Johnson* (Attorney-General), for the United States, and *Mr. Seward*, for the defendant.

*Mr. Johnson* contended, that both questions should be answered in the affirmative.

1. Because, under the fifth clause of the eighth section of the first article of the Constitution, the power to coin money, regulate the value thereof and of foreign coin, includes the power in question.

2. Because, if it does not, it is included in the power to provide for the punishment of counterfeiting the securities and current coins of the United States, in the succeeding clause of the same section.

3. Because, if the question was at any time a doubtful one, it is to be considered as settled by legislative and judicial precedents, as well upon these provisions as, with reference to this question, upon analogous provisions in the Constitution. 3 Story on Constitution, § 1118; Rawle, ch. 9, p. 163; The Federalist, No. 42; Act of 21st April, 1806 (2 Statutes at Large, 404); McCulloch *v.* State of Maryland, 4 Wheat. 401, 409, 416–419, 421.

*Mr. Seward* contended that the whole question had been adjudicated in the case of Fox *v.* The State of Ohio, 5 Howard, 433.

The State of Ohio had enacted a law, "that, if any person shall counterfeit any of the coins of gold, silver, or copper currently passing in this State, or shall alter or put off counterfeit coin or coins, knowing them to be such," &c. 29 Ohio Stat. 136, quoted 5 Howard, 432. Malinda Fox was convicted of passing, with fraudulent intent, a base and counterfeit coin, in the similitude of a good and legal silver dollar. She brought a writ

of error to this court, on the ground of the unconstitutionality of the Ohio statute. The judgment was affirmed, and so the Ohio statute was sustained.

This decision is conclusive that the portions of the law of Congress of 1825 now under consideration are unconstitutional. But this argument requires the following conditions to be established: —

1. That the offence prohibited by this portion of the act of Congress, and the offence forbidden by the Ohio statute, be identical.

2. That the constitutionality of the Ohio law appears to have been sustained upon the ground, not of a concurrent jurisdiction of the offence in the State and national governments, but on the ground of an exclusive jurisdiction residing in the State alone.

3. That the principle thus decided was necessarily involved in that case, and therefore the authority in that case is not *obiter*, but *res adjudicata*.

That the coin in the Ohio case was legalized coin was assumed by the whole court, including Judge McLean. Daniel's Opinion, 5 Howard, 432. McLean's Opinion, 5 Howard, 436.

I. The offences were identical under the two acts. In the Ohio statute, it was not the "making, the forging, or the counterfeiting, or the aiding in making, forging, or counterfeiting the coin"; it was the "*putting off* counterfeit coin or coins, knowing them to be such." *Putting off* in the one case, and passing in the other, are identical. Importing, or bringing in from other places, with intent to pass, is of the same character, as opposed to making, forging, or counterfeiting. And this is the test, as established by the Supreme Court. Fox *v.* Ohio, 5 Howard, 433.

And there is yet another index in the test. It is the party to be directly affected by the fraud; — in the one case, the government; in the other, individuals. And the act of Congress of 1825 includes this very intent to defraud individuals, not the government.

II. The constitutionality of the Ohio law appears to have been sustained upon the ground, not of a concurrent jurisdiction of the offence in the State and national governments, but on the ground of an exclusive jurisdiction in the State.

Nothing could be more direct or explicit than the language of the court (5 Howard, 433): — "We think it manifest that the language of the Constitution, by its proper signification, is limited to the facts, or to the faculty in Congress of coining and of stamping the standard of value upon what the govern-

ment creates or shall adopt, and of punishing the offence of producing a false representation of what may have been so created or adopted. The imposture of passing a false coin creates, produces, or alters nothing; it leaves the legal coin as it was," &c.

III. The question was directly involved in that case. Judge Daniel so held it. So did Judge McLean (5 Howard, 437): — "And these powers must be incomplete, and in a great degree inoperative, unless Congress can exercise the power to punish the passing of counterfeit coin."

But it was indispensably involved in that case. The court could only obtain jurisdiction of the Ohio case on the ground that the Ohio law conflicted with the constitutional sovereignty of the United States. That conflict was the exact, the controlling question. If a question at all what were the boundaries of the respective jurisdictions, it was not incidental, but material, essential. If you could now say that the jurisdictions are concurrent, you could equally say that the State had no jurisdiction at all. The whole course of reasoning, of logic, must be changed.

What is *obiter?* Judge McLean's reasoning is conclusive, that the power must be exclusive in the States; since he shows that where it resides it must be exclusive. 5 Howard, 438, 439.

The views thus submitted are sustained by the opinion of Conkling, Judge of the District Court of the United States for the Northern District of New York, in the case of The United States v. ————, Law Reporter, June, 1849, p. 90. And they are opposed by Brockenbrough, District Judge for the Western District of Virginia, in the case of Campbell v. United States, Law Reporter, Vol. X. p. 400. But the learned judge only shows, that, as the precise questions had not been decided by the Supreme Court in a case where the indictment was for passing counterfeit coin, he felt himself at liberty to sustain indictments found under the act of 1825. The act of 1825 must be assumed to have been known to the Supreme Court when they decided the case of Fox v. Ohio.

The argument derived by Judge Brockenbrough from the analogy to the provision concerning the post-office is untenable; because in that case the Constitution did not define the power of Congress, but left a full discretion; whereas, in the case of coin, the Constitution defines the power of punishing counterfeiting, and limits it to the making of the spurious coin.

The British statutes define two classes of offences in regard to coin, — the making and the passing; and the terms of the Constitution adopt the former only.

This distinction was recognized in the case of Fox *v.* Ohio. And Judge Brockenbrough admits it. And he concedes that the power to punish the passing is not derived from any amplification of the term *counterfeiting* in the Constitution. Law Reporter, Vol. X. p. 404. But the Judge maintains that it is an implied power.

But the court forgets that the Constitution found all the States in possession of jurisdiction over private frauds; and it is to be inferred that it was thought that jurisdiction might best be left there. The question now is, not whether it was wisely left there, but whether it was left there. The Judge (Brockenbrough) erred in assuming that the denial of jurisdiction to Congress in the case of Fox *v.* Ohio was *obiter*. On the contrary, the court expressly deny it, and argue upon the opposite assumption as one conceded, not in fact, but only for argument's sake.

The provision is wise as it is now settled. Congress is to furnish a uniform currency for all the States, and is to punish the crime of forging it. But the multiplied ramifications of crime require that the courts of the several States should have power to punish frauds in commerce and traffic, as well when coin is the instrument as in other cases. The machinery of State police and penal jurisprudence is better adapted and more effective.

Mr. Justice DANIEL delivered the opinion of the court.

This is a certificate of division of opinion from the Northern District of New York.

The case is clearly and succinctly stated in the following abstract from the record: —

"At a Circuit Court of the United States, begun and held at Albany, for the Northern District of New York, in the Second Circuit, on the third Tuesday of October, in the year of our Lord 1848, and in the seventy-third year of American Independence.

"Present, the Honorable Samuel Nelson and Alfred Conkling, Esquires.

"THE UNITED STATES OF AMERICA *v.* PETER MARIGOLD.

"*State of the Pleadings.*

"This is an indictment against the defendant, charging him, under the twentieth section of the act of Congress entitled 'An act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes,' approved March 3, 1825, —

" 1st. With having brought into the United States, from a foreign place, with intent to pass, utter, publish, and sell as true, certain false, forged, and counterfeit coins, made, forged, and counterfeited in the resemblance and similitude of certain gold and silver coins of the United States, coined at the mint, he knowing the same to be false, forged, and counterfeit, and intending thereby to defraud divers persons unknown.

" 2d. With having uttered, published, and passed such counterfeit coins, with intent to defraud, &c.

" To this indictment the defendant demurs, and George W. Clinton, attorney of the United States for the said district, who prosecutes in this behalf, joins in demurrer.

" This cause coming on to be argued at this term, the following questions occurred : —

" First.  Whether Congress, under and by the Constitution, had power and authority to enact so much of the said twentieth section of the said act as relates to bringing into the United States counterfeit coins.

" Second.  Whether Congress, under and by virtue of the Constitution, had power to enact so much of the said twentieth section as relates to uttering, publishing, passing, and selling of the counterfeit coins therein specified.

" On which said several questions, the opinions of the judges were opposed.

" Whereupon, on motion of the said attorney, prosecuting for the United States in this behalf, that the points on which the disagreement has happened may, during the term, be stated under the direction of the judges, and certified under the seal of the court to the Supreme Court, to be finally decided, — it is ordered, that the foregoing state of the pleadings, and statement of the points upon which the disagreement has happened, which is made under the direction of the judges, be certified, according to the request of the attorney, prosecuting as aforesaid, and the law in that case made and provided."

The inquiry first propounded upon this record points, obviously, to the answer which concedes to Congress the power here drawn in question.  Congress are, by the Constitution, vested with the power to regulate commerce with foreign nations ; and however, at periods of high excitement, an application of the terms " to regulate commerce " such as would embrace absolute prohibition may have been questioned, yet, since the passage of the embargo and non-intercourse laws, and the repeated judicial sanctions those statutes have received, it can scarcely, at this day, be open to doubt, that every subject falling within the legitimate sphere of commercial regulation

may be partially or wholly excluded, when either measure shall be demanded by the safety or by the important interests of the entire nation. Such exclusion cannot be limited to particular classes or descriptions of commercial subjects; it may embrace manufactures, bullion, coin, or any other thing. The power once conceded, it may operate on any and every subject of commerce to which the legislative discretion may apply it.

But the twentieth section of the act of Congress of March 3d, 1825, or rather those provisions of that section brought to the view of this court by the second question certified, are not properly referable to commercial regulations, merely as such; nor to considerations of ordinary commercial advantage. They appertain rather to the execution of an important trust invested by the Constitution, and to the obligation to fulfil that trust on the part of the government, namely, the trust and the duty of creating and maintaining a uniform and pure metallic standard of value throughout the Union. The power of coining money and of regulating its value was delegated to Congress by the Constitution for the very purpose, as assigned by the framers of that instrument, of creating and preserving the uniformity and purity of such a standard of value; and on account of the impossibility which was foreseen of otherwise preventing the inequalities and the confusion necessarily incident to different views of policy, which in different communities would be brought to bear on this subject. The power to coin money being thus given to Congress, founded on public necessity, it must carry with it the correlative power of protecting the creature and object of that power. It cannot be imputed to wise and practical statesmen, nor is it consistent with common sense, that they should have vested this high and exclusive authority, and with a view to objects partaking of the magnitude of the authority itself, only to be rendered immediately vain and useless, as must have been the case had the government been left disabled and impotent as to the only means of securing the objects in contemplation.

If the medium which the government was authorized to create and establish could immediately be expelled, and substituted by one it had neither created, estimated, nor authorized, — one possessing no intrinsic value, — then the power conferred by the Constitution would be useless, — wholly fruitless of every end it was designed to accomplish. Whatever functions Congress are, by the Constitution, authorized to perform, they are, when the public good requires it, bound to perform; and on this principle, having emitted a circulating medium, a standard of value

indispensable for the purposes of the community, and for the action of the government itself, they are accordingly authorized and bound in duty to prevent its debasement and expulsion, and the destruction of the general confidence and convenience, by the influx and substitution of a spurious coin in lieu of the constitutional currency.   We admit that the clause of the Constitution authorizing Congress to provide for the punishment of counterfeiting the securities and current coin of the United States does not embrace within its language the offence of uttering or circulating spurious or counterfeited coin (the term *counterfeit*, both by its etymology and common intendment, signifying the fabrication of a false image or representation); nor do we think it necessary or regular to seek the foundation of the offence of circulating spurious coin, or for the origin of the right to punish that offence, either in the section of the statute before quoted, or in this clause of the Constitution.   We trace both the offence and the authority to punish it to the power given by the Constitution to coin money, and to the correspondent and necessary power and obligation to protect and to preserve in its purity this constitutional currency for the benefit of the nation.   Whilst we hold it a sound maxim that no powers should be conceded to the Federal government which cannot be regularly and legitimately found in the charter of its creation, we acknowledge equally the obligation to withhold from it no power or attribute which, by the same charter, has been declared necessary to the execution of expressly granted powers, and to the fulfilment of clear and well-defined duties.

It has been argued, that the doctrines ruled in the case of Fox v. The State of Ohio are in conflict with the positions just stated in the case before us.   We can perceive no such conflict, and think that any supposition of the kind must flow from a misapprehension of one or of both of these cases.   The case of Fox v. The State of Ohio, involved no question whatsoever as to the powers of the Federal government to coin money and regulate its value ; nor as to the power of that government to punish the offence of importing or circulating spurious coin ; nor as to its power to punish for counterfeiting the current coin of the United States.   That case was simply a prosecution for a *private cheat* practised by one citizen of Ohio upon another, within the jurisdiction of the State, by means of a base coin in the similitude of a dollar, — an offence denounced by the law of Ohio as obnoxious to punishment by confinement in the State Penitentiary.   And the question, and the only one, brought up for the examination of this court was, whether this private cheat could be punished by the State authorities, on account of

the immediate instrument of its perpetration having been a base coin, in the similitude of a dollar of the coinage of the United States.

The stress of the argument of this court in that case was to show, that the right of the State to punish that cheat had not been taken from her by the express terms, nor by any necessary implication, of the Constitution. It claimed for the State neither the power to coin money nor to regulate the value of coin; but simply that of protecting her citizens against frauds committed upon them within her jurisdiction, and, indeed, as a means auxiliary thereto, of relying upon the true standard of the coin as established and regulated under the authority of Congress. In illustration of the existence of the right just mentioned in the State, and in order merely to show that it had not been taken from her, it was said that the punishment of such a cheat did not fall within the express language of those clauses of the Constitution which gave to Congress the right of coining money and of regulating its value, or of providing for the punishment of counterfeiting the current coin. It was also said by this court, that the fact of passing or putting off a base coin did not fall within the language of those clauses of the Constitution, for this fact fabricated, altered, or changed nothing, but left the coins, whether genuine or spurious, precisely as before. But this court have nowhere said, that an offence cannot be committed against the coin or currency of the United States, or against that constitutional power which is exclusively authorized for public uses to create that currency, and which for the same public uses and necessities is authorized and bound to preserve it; nor have they said, that the debasement of the coin would not be as effectually accomplished by introducing and throwing into circulation a currency which was spurious and simulated, as it would be by actually making counterfeits, — fabricating coin of inferior or base metal. On the contrary, we think that either of these proceedings would be equally in contravention of the right and of the obligation appertaining to the government to coin money, and to protect and preserve it at the regulated or standard rate of value.

With the view of avoiding conflict between the State and Federal jurisdictions, this court in the case of Fox *v.* The State of Ohio have taken care to point out, that the same act might, as to its character and tendencies, and the consequences it involved, constitute an offence against both the State and Federal governments, and might draw to its commission the penalties denounced by either, as appropriate to its character in reference to each. We think this distinction sound, as we hold

48 *

to be the entire doctrines laid down in the case above mentioned, and regard them as being in no wise in conflict with the conclusions adopted in the present case.

We therefore order it to be certified to the Circuit Court of the United States for the Northern District of New York, in answer to the questions propounded by that court : —

1st. That Congress had power and authority, under the Constitution, to enact so much of the twentieth section of the act of March 3, 1825, entitled "An act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes," as relates to bringing into the United States counterfeit coins.

2d. That Congress, under and by virtue of the Constitution, had power to enact so much of the said twentieth section as relates to the uttering, publishing, passing, and selling of the counterfeit coin therein specified.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Northern District of New York, and on the points or questions on which the judges of the said Circuit Court were opposed in opinion, and which were certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court, — 1st. That Congress had power and authority, under the Constitution, to enact so much of the twentieth section of the act of 3d March, 1825, entitled "An act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes," as relates to bringing into the United States counterfeit coins ; and 2d. That Congress, under and by virtue of the Constitution, had power to enact so much of the said twentieth section as relates to uttering, publishing, passing, and selling of the counterfeit coins therein specified. Whereupon, it is now here ordered and adjudged by this court, that it be so certified to the said Circuit Court.