(A.) If silver should appreciate 200 per cent., the tenant would be *ruined*.

(B.) If silver dollars should be called in and cease to exist, the landlord could never be paid, and if there were no right of re-entry, would lose his estate.

## MERVINE *versus* SAILOR *et al.*

ERROR to the District Court of *Philadelphia.*

This was an action of covenant by Thomas Mervine against Henry Sailor, John F. Trout and Edwin Greble.

The plaintiff declared on a ground-rent deed dated March 27th 1839, conveying a lot of ground on James street, Philadelphia, to the defendants, they " yielding and paying therefor and thereout the yearly rent of $570, lawful silver money of the United States, each dollar weighing seventeen pennyweights and six grains *at least*, in half-yearly payments ;" and averred, that the

[Mervine v. Sailor.]

defendants covenanted to pay the rent as aforesaid, and, by virtue of the deeds, entered upon said lot: that on the 1st of April 1863, the sum of $285 in the above-mentioned silver money, each dollar weighing, &c., with interest, was due and unpaid, &c.

The defendants pleaded that on the 3d day of April 1863, they tendered the half-year's ground-rent, with interest, "in the *lawful money* of the United States," which the plaintiff refused; that they have always been ready to pay the said sum, and "now bring the same here into court," &c.

The plaintiff replied, that the defendants did not tender the rent "in lawful silver money," &c., but "in promissory notes, or paper money, of the United States, issued under the Acts of Congress of February 25th and July 11th 1862, to the nominal amount on their face of the said sum of $285—the same not being of equal exchangeable value with the silver dollars aforesaid," &c.

To the replication the defendants demurred, showing for cause of demurrer, "that the said notes issued under the said Acts of Congress aforesaid * * * were lawful money, and a legal tender in payment of the said debt."

The court gave judgment for the defendants on the demurrer: the plaintiff removed the case by writ of error.

The errors assigned were:—

1. Entering judgment for the defendants on the demurrer to the replication of the plaintiff.

2. Not entering judgment on the demurrer in favour of the plaintiff.

*G. M. Wharton*, for plaintiff in error.—The contract was an unqualified engagement, and imported that the payment was to be in standard silver money, of a given weight, of the specified standard of fineness. It was for the payment of a certain weight of standard silver in the shape of dollars. The defendants assumed the risk of their ability to perform this contract: Sjoerds v. Luscombe, 16 East 201; Hills v. Sughrue, 15 M. & W. 261. If the dollars could not be procured, the requisite weight of silver of the standard fineness, or any other kind of money of like exchangeable value with the dollars, would have been a sufficient tender: but not paper money of an exchangeable value not equal to dollars. The measure of damages for breach of a contract such as this, is the value of the money contracted to be paid: Foutsell v. Burrows, Carthew 255; Hixon v. Hixon, 7 Humphrey 33. The several Acts of Congress, viz., April 10th 1806, April 2d 1792, January 18th 1837, June 28th 1834, March 3d 1843, show that the *weight* of the standard metal was an essential element in its quality as a lawful tender; and fixing a minimum *weight* in this deed, proves that the parties

[Mervine *v.* Sailor.]

intended that the landlord should be sure to receive for his rent a determinate weight of silver. When, therefore, the defendants tendered something of less value, they must show that this, by some constitutional law, is made an equivalent substitute for the silver money contracted to be paid.

Then, it is contended that,

1. Congress cannot issue paper money; but

2. If they can, they cannot make it a legal tender.

3. If they can do so in regard to contracts made after the passage of the act, they cannot do so with regard to those made before.

4. Congress has no power to alter or nullify contracts made in a state by the citizens thereof.

5. If a contract made in a state by its citizens requires payment in a particular kind of money, Congress cannot compel the creditors to receive less than the market value of the money called for by the contract.

6. In this case the contract required the rent to be paid in silver dollars of the weight specified: the tender was in paper money of less value, and, therefore, the defendants failed to comply with their contract.

1 and 2. Congress has no powers except those expressly granted or necessarily implied: 1 Kent's Com. 243, 313; 1 Story on Const. 382–442. Article I. § 8 of the Constitution contains an enumeration of the powers of Congress. The only power given as to the subject-matter, is to " coin money, regulate the value thereof and of foreign coin." " To coin" refers to metallic money. " To regulate the value," refers to the money coined, both from the position of the words and from the subsequent expression, " foreign *coin*:" United States *v.* Marigold, 9 How. 560; Fox *v.* Ohio, 5 Id. 432; Ogden *v.* Saunders, 12 Wheat. 213. No power can necessarily be inferred to be granted to Congress, because prohibited to the states. Congress has express power to *coin* money. Coin, therefore, was the only thing which the States could make a legal tender. As the money coined by authority of Congress furnishes the means by which debts can be compulsorily paid, there is no need to infer a power to make other money. Congress can make laws necessary to carry into execution the granted powers. Although this does not mean laws *absolutely* necessary: Commonwealth *v.* Lewis, 6 Binn. 270; McCullough *v.* Maryland, 4 Wheat. 413; yet it does not refer to the powers themselves, but to the means of carrying them out.

The power to tax, to pay debts, and to borrow money, has no natural reference to making money. The power to regulate commerce relates to superintending the interchange of commodities, &c., not to creating a medium of exchange. The issuing of paper

[Mervine v. Sailor.]

money as an evidence of indebtedness, and as embraced under a liberal signification of the power to borrow money, has no connection with the power to make that money a legal tender. The power assumed to make paper money a tender, implies a power to make anything a tender irrespective of the terms of private contracts.

3, 4 and 5. It is a dangerous doctrine, that Congress may modify or annul private contracts. A contract to pay silver is essentially modified, if not annulled, where a party is compelled to accept something else. The dictum of Judge Washington in Evans v. Peters, Peters C. C. Rep. 337, that the Constitution does not forbid Congress to pass laws violating the obligation of a contract, has not been affirmed by any decision of the Supreme Court. There may be a difference between the constitutionality of a law which Congress has a clear power to pass, and of a law which impairs the obligation of a contract relating to a matter not clearly within its power: Ex parte Klein, 1 How. 277 in note. The obligation of a contract is impaired, if it cannot be enforced by virtue of some legislative enactment: McCracken v. Hayward, 2 How. 608.

It is an unwarrantable stretch of language to assert that the legal tender clause of the Act of Congress makes a paper dollar equal to the silver dollar of this deed. Congress has sanctioned by enactment a difference between paper and silver money; paper cannot be offered for duties. Interest on some loans is payable in gold—on others in paper. The United States buys and sells gold in exchange for paper, and pays and receives the proportionate difference.

*G. Bleight Browne*, for defendants in error.—The words "lawful silver money, each weighing," &c., are only descriptive and surplusage. All debts then were demandable in silver or gold. This could have been paid in gold, although "silver" is in the covenant. The weight in the covenant is more than the full weight of silver dollars at its date. The weight has been changed by various Acts of Congress, and was considerably reduced by the Act of January 18th 1837. It cannot be doubted that a dollar of this reduced weight would be a legal tender for a debt due before the reduction: yet, in fact, the creditor received less than he contracted for.

Ground-rent is not a debt till due, and is payable in whatever is then lawful money. The notes represent gold and silver, as the government is bound to pay them eventually in gold and silver, for which they are but a temporary substitute.