2   221
f36   250

STATE OF OREGON, Appellant, *v.* DORVILLE BROWN, Respondent.

*Appeal from Clackamas County.*

1. The authority for punishing the crime of counterfeiting the coin of the United States, rests exclusively in the courts of the United States.
2. The offense of having implements, &c., adapted to the counterfeiting of the United States coin in one's possession, with intent to use the same for such purpose is not included in the crime of counterfeiting the coin.
3. State legislatures may make such possession, with such intent, an offense and empower the State courts to take jurisdiction over it.

· In June, 1867, in Clackamas county, Dorville Brown was indicted and tried for having unlawfully and feloniously in his possession, moulds adapted and designed for coining and making counterfeit coin in the similitude of coin of the United States, &c. No question was raised as to the sufficiency of the indictment, and after trial and verdict of guilty, the counsel for respondent filed a motion in arrest of judgment on the ground that the indictment charged no offense cognizable by the State courts; claiming that, if a crime at all, it was one over which the United States had exclusive jurisdiction. The court below sustained the motion, and the State appealed.

*Hill & Mulkey,* for appellant:

1st. The indictment is framed under *section* 591 *of the Oregon Code,* providing, substantially, "if any person shall have in his possession or control any mould, pattern, &c., adapted or designed for coining, or making any counterfeit coin, &c., with intent to use the same in coining, &c."

2d. Authority of State courts over such cases. *Fox* v. *Ohio,* 5 *How.* 410; *United States* v. *Marigold,* 9 *How.,* 560; *Territory* v. *Coleman,* 1 *Oregon,* 191.

State of Oregon *v.* Brown.

*Stout & Reed*, for respondent :

1st. The United States courts have an exclusive jurisdiction of the rights to punish the counterfeiting of the coin of the United States, and all offenses necessarily included in that act. (*Article* 1, *section* 8, *sub.*, *Cont. of the United States.*)

2d. The 26*th section of act of Congress*, 1825, confers no jurisdiction on States; that Congress could confer no such authority; that laws of the States, subsequent to 1825, could not certainly be held to confer jurisdiction. (5 *How.*, 436.)

3d. A State may punish for the passing counterfeit coin as well as may the United States. (*Moore* v. *Illinois*, 14 *How.*, 20.)

4th. The possession of tools for counterfeiting coin is included in the offense of counterfeiting itself, and hence belongs to the United States Court. (5 *Mo.*, 421; 5 *How.*, 436; 9 *How.*, 560;) (1 *Story on Cont.*, 313, *sections* 439–40–41 & 42; *and* 2 *Story on Cont.*, 59, *section* 1123.

WILSON, J. The State of Oregon has assumed the authority to declare as criminal certain acts, done with reference to the money of the United States, whether immediately or remotely connected with the *act* of *producing* the counterfeited coin, and the question is embraced in this inquiry : Is the possession of moulds and tools, adapted and designed for producing counterfeit coin, coupled with *the intent* of using them for that purpose, an offense distinct from the act of counterfeiting the coin itself? Various opinions, fortified by decisions of courts, yet exist as to what would or would not come within the *offense* of *counterfeiting* the coin. When that question arose in the Supreme Court of the United States, the eminent judges thereof held to differing lines of distinction. The States have assumed to punish different acts, and a constant struggle has been carried on, on the one hand, restricting Congress to the literal interpretation of the language in the Constitution of the United States, and, on the other, controlling in the federal courts all matters connected with coining

money and providing for maintaining its purity and efficiency. We are not aware that the question in its present form has ever been in the United States Supreme Court. Its decisions have generally been concerning the jurisdiction over acts subsequent in commission to that of *making* the counterfeit coin; mostly to the uttering and passing of the false coin. State courts concede that, as to the acts necessary for the *counterfeiting*, that is, the *making* or *producing* of the false representation on metal of the designs found upon our coin, Congress has exclusive authority to declare the penalty, and the federal courts exclusive jurisdiction over its enforcement. Now it is farther conceded that the federal and State courts have jurisdiction over acts connected with the uttering and passing of counterfeit coin. These immediately succeed the *making* of the false coin; and both tribunals have control, doubtless, as we conclude, because the United States are bound to preserve the purity and value of the coin, and the act of uttering counterfeit militates against the preservation of confidence and safety in the money it adopts ; and, because the States have full right to punish for the fraud and wrong done by one who knowingly imposes upon his fellow-man for a reality, that which is false and valueless.

The decision in the Supreme Court of the case of *Fox* v. *Ohio*, 5; *How.*, 410; 16 *Curtis*, 447; renders our labors essentially easier. The doctrine then declared was this: "We think it manifest that the language of the *Constitution, art.* 1, *sec.* 8, *sub.* 6, by its proper signification is limited to the facts, or to the faculty in Congress of *coining*, and of *stamping* the standard of value upon what the government creates or shall adopt as money ; and of punishing the offense of *producing a false representation* of what may have been so created or adopted," and the reasoning of that court, subsequently in the same decision, clearly demonstrates how and why the federal and State courts may have jurisdiction over apparently the same offense ; and also what is meant by that

amendment of the Constitution in respect to being twice put in jeopardy of life or limb.

The counsel for respondent admit the correctness and force of that decision, and its substantial affirmance in *U. S.* v. *Marigold,* 9 *How.*, 560; 18 *Curtis*, 261; *Moore* v. *Illinois,* 14 *How.*, 20; 20 *Curtis*, 6; and in the courts of the territory of Oregon, in *Oregon* v. *Coleman,* 1 *Oregon,* 191, the doctrine was clearly affirmed. The offense in *Fox* v. *Ohio* was an act very closely related to the coinage of money. The counterfeited coin was made; was harmless so long as it never came to light. Its ill effects were only realized when it was sent out to operate as good legal coin. These were successive acts, the one was an offense against the United States, whose exclusive jurisdiction, as we have shown, "extends to the coining or stamping of the standard of value upon that which the government adopts as money." The other of a double nature, punishable by both the general government and the States, which make it a crime.

Where is the disparity or inconsistency in reasoning if, with this admission, we apply it to the case in hand. Certainly the mere having of moulds in one's possession which could, if used, produce the impression found upon our legal coin is not a part of the act of coinage. These moulds might never be used, and no counterfeiting would happen. They might be kept with the full intention to use them in making false coin, and some controlling interference ever prevent the result. No counterfeiting has been done; the coin of the United States has not been tampered with or debased. Yet, the initiatory steps had all been taken; those necessary articles had been prepared, and the intent was just as well formed to commit the injury as it need be to accomplish the full act. The full act is the crime over which the United States has exclusive control. The attempt is an effort carried into such a state of completion as would bring it within the definition of counterfeiting. It could well be made a crime, and yet never consummate that which is within the exclusive control of the

United States.   Under the ruling in *Fox* v. *Ohio* the, U. S. Supreme Court has no exclusive jurisdiction of that which is made the offense by our law.   We know of no provision in the laws of the United States making the preparation and possession of such tools an offense.   The State of Oregon, in the absence of such provision, may well make that possession, coupled with the intent to use them for an unlawful purpose, an offense; and provide that men should not only be punished for a result, but also for the preparation which is clearly intended to consummate such result.   No question is raised whether it would be an offense abstractly.   The question is, has or has not the federal courts the sole jurisdiction thereof. We hold it an act over which the States have a perfect authority.   With these views it becomes necessary to reverse the judgment below and remand the case, with orders for the passing of sentence upon verdict.

It is so ordered.