WEBER v. FREED, Collector of Customs.

(Circuit Court of Appeals, Third Circuit. July 19, 1915.)

No. 1966.

1. CONSTITUTIONAL LAW ⬅48—STATUTES—VALIDITY—JUDICIAL POWER.
   Only in a clear case may the courts declare an act unconstitutional.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ⬅48.]

2. COMMERCE ⬅55—FOREIGN COMMERCE—POWER OF CONGRESS.
   Act July 31, 1912, c. 263, 37 Stat. 240 (Comp. St. 1913, §§ 10416–10418), making it unlawful to bring into the United States any film of any prize fight, which is designed to be used or may be used for purposes of public exhibition, is a valid exercise of the power conferred by the commerce clause, though it may indirectly interfere with the police power of the states.
   [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 72–102; Dec. Dig. ⬅55.]

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. COMMERCE ☞8—FOREIGN COMMERCE—POWER OF CONGRESS.

The right to determine what articles, offered for import, shall be admitted into the country, is solely for Congress, and the right to admit on terms implies the plenary right to refuse admission on any terms, though after an article has once been admitted, and has become part of the common stock of property, Congress may lose control over it; but an article does not become subject to the power of the states until it has been admitted into the country.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. ☞8.]

4. COMMERCE ☞55—FOREIGN COMMERCE—POWER OF CONGRESS—STATUTES—CONSTRUCTION.

An importation of moving picture films of a prize fight is within the prohibition of Act July 31, 1912, prohibiting the importation of prize fight films, designed to be used or which may be used for purposes of public exhibition, for the films are articles of commerce, capable of being sold or leased, and the mere fact that the importer has no present intent of using them for any other purpose than exhibition does not change their character or remove them from the subject of commerce.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 72–102; Dec. Dig. ☞55.]

Appeal from the District Court of the United States for the District of New Jersey; Haight, Judge.

Suit by Lawrence Weber against Frederick S. Freed, Collector of Customs. From a decree denying relief, plaintiff appeals. Affirmed.

Charles A. Towne, of New York City, for appellant.

J. L. Bodine, of Trenton, N. J., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. On July 31, 1912, Congress passed an act declaring it unlawful to deposit in the mails or with any express company or other common carrier for interstate transportation,— " * * * or to bring or to cause to be brought into the United States from abroad, any film or other pictorial representation of any prize fight or encounter of pugilists under whatever name, which is designed to be used, or may be used, for purposes of public exhibition," and punishing any violation of the act by fine or imprisonment at labor, or both, at the discretion of the court. Subsection 380 of section 1 of the Tariff Act of 1913 (Act Oct. 3, 1913, c. 16, 38 Stat. 114 [Comp. St. 1913, § 5291]) imposes a specified duty on "photographic-film positives, imported in any form, for use in any way in connection with moving-picture exhibits," etc., and adds a proviso to the effect that all films so imported shall be subject to such censorship as may be imposed by the Secretary of the Treasury. As yet the Secretary has not exercised the power given him by this proviso.

Early in April, 1915, the plaintiff brought to the port of Newark, N. J., from the Island of Cuba, moving picture films of the prize fight or pugilistic encounter between Willard and Johnson, and offered them for entry. The collector refused to admit them, basing his action upon the foregoing act of 1912, and the plaintiff thereupon filed the

pending bill in equity to enjoin the collector from persisting in such refusal. The District Court declined to grant a preliminary injunction (treating the case, however, as if on final hearing), and the appeal before us attacks the correctness of this order. The plaintiff concedes that the letter of the statute supports the collector and the District Court, but asserts that the act is in substance unconstitutional, and should therefore be disregarded. In brief, the argument is that Congress, while in form exercising its power under the commerce clause, is in reality attempting to exercise the police power that belongs solely to the states.

[1-3] We do not take this view of the situation. It is needless to say that only in a clear case may an act be declared unconstitutional; but it is equally true that, if such a case be presented, the duty of a court is plain. In our opinion the statute under review belongs undoubtedly to a class of which numerous examples exist, namely, statutes that fall directly under the commerce clause, but affect indirectly the field of the police power. It can hardly be doubted that the right or the power to determine what articles offered for import shall be admitted into this country belongs solely to Congress, and that the right to admit on certain terms implies the plenary right to refuse admission on any terms. It is true that after an article has once been admitted, and has thus become part of the common stock of property, Congress may so far lose control over it that the regulation of its future use may fall properly within the jurisdiction of the states; but the article does not become subject to the state until it has passed the custom house, and, if Congress chooses to exclude it altogether on the ground, for example, that the public health or the public morals would probably suffer if it be admitted, we are of opinion that such exclusion is permitted by the Constitution. Manifestly, the power must exist somewhere, and as the states do not possess it there is no other depositary except the federal government. Indirectly, no doubt, the police power of the states may thus be interfered with. If, for example, a state should not be unwilling, or should perhaps even be desirous, to allow moving pictures of a prize fight to be exhibited, such a policy would of course be hampered by the act in question; but the interference would be indirect, merely an unavoidable consequence of the exercise by Congress of its sovereign and undoubted power to regulate, and therefore to prohibit, commerce with foreign countries. In Brolan v. United States, 236 U. S. 216, 35 Sup. Ct. 285, 59 L. Ed. ——, the Supreme Court quotes with approval the following paragraph from Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525:

"The power to regulate commerce with foreign nations is expressly conferred upon Congress, and, being an enumerated power, is complete in itself, acknowledging no limitations other than those prescribed in the Constitution. Lottery Case, 188 U. S. 321, 353–356 [23 Sup. Ct. 321, 47 L. Ed. 492]; Leisy v. Hardin, 135 U. S. 100, 108 [10 Sup. Ct. 681, 34 L. Ed. 128]. Whatever difference of opinion, if any, may have existed or does exist concerning the limitations of the power, resulting from other provisions of the Constitution, so far as interstate commerce is concerned, it is not to be doubted that from the beginning Congress has exercised a plenary power in respect to the exclusion of merchandise brought from foreign countries; not alone directly by

the enactment of embargo statutes, but indirectly, as a necessary result of provisions contained in tariff legislation. It has also, in other than tariff legislation, exerted a police power over foreign commerce by provisions which in and of themselves amounted to the assertion of the right to exclude merchandise at discretion. This is illustrated by statutory provisions which have been in force for more than 50 years, regulating the degree of strength of drugs, medicines, and chemicals entitled to admission into the United States, and excluding such as did not equal the standards adopted. 9 Stat. at L. 237, c. 70, Rev. Stat. § 2933, U. S. Comp. Stat. 1901, p. 1936."

[4] The declaration in the bill that the films in controversy are intended, not for sale, but solely for exhibition, is not controlling. Indeed, the allegations of the bill as a whole leave no room for doubt that the object of exhibiting the films is the large gains that are expected to accrue therefrom, and we see little, if any, difference between such an object and the sale or leasing of the films themselves. The plaintiff intends to sell the privilege of looking at the moving pictures, and from the very nature of such films this is precisely the use for which they are designed. But in any event the films are articles of commerce, capable of being sold or leased, and the mere fact that the plaintiff has no present intention of using them for any other purpose than exhibition does not change their essential, material, character, or remove them from the class of tangible things that are the subject of "commerce" in any definition of that word.

We need not prolong the discussion. Not infrequently Congress has been sustained in a similar exercise of power. In Buttfield v. Stranahan, 192 U. S. 470, 24 Sup. Ct. 349, 48 L. Ed. 525, the exclusion of inferior tea was upheld; Brolan v. United States, supra, sustained the exclusion of opium; in The Abby Dodge, 223 U. S. 176, 32 Sup. Ct. 310, 56 L. Ed. 390, sponges gathered at a certain season of the year were denied admission; imitations of coins were excluded in United States v. Marigold, 9 How. 560, 13 L. Ed. 257; in Reid v. Colorado, 187 U. S. 137, 23 Sup. Ct. 92, 47 L. Ed. 108, the interstate transportation of diseased cattle was forbidden, and in the Lottery Cases, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492, the interstate transportation of lottery tickets; Hoke v. United States, 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905, sustained the constitutionality of the so-called white slave act; and in Hipolite Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, the prohibition of transporting a food product was sustained on the ground that Congress had made the product an outlaw. The government's brief contains a list of nearly 20 statutes in which Congress prohibits the importation or carriage of various articles that we need not enumerate.

The decree is affirmed.