UNITED STATES of America, Plaintiff-Appellee,

v.

George Fee HOWELL, Defendant-Appellant.

No. 72–2166.

United States Court of Appeals, Ninth Circuit.

Nov. 20, 1972.

Ronald E. Landers (argued), Los Angeles, Cal., for defendant-appellant.

John K. Cameron, Jr., Asst. U. S. Atty. (argued), Eric A. Nobles, Leslie E. Osborne, Jr., Asst. U. S. Attys., William D. Keller, U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before HAMLEY and WRIGHT, Circuit Judges, and POWELL,[*] District Judge.

HAMLEY, Circuit Judge:

George Fee Howell appeals from his conviction on a charge of transferring counterfeit Federal Reserve notes with the intent that they be passed as true and genuine, in violation of 18 U.S.C. § 473. Howell argues: (1) 18 U.S.C. § 473 is unconstitutional, (2) Marcellino Pina, Jr., and his two younger brothers, who were alleged to have passed counterfeit bills supplied by defendant Howell, were held by authorities in violation of the rule announced in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and stated in Rule 5(a), Fed.R.Crim.P., (3) Pina was coerced into incriminating himself, in violation of principles announced in Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), (4) defendant was entrapped as a matter of law and therefore should have been acquitted under the rule of Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932), and (5) the Government's action in recording a telephone conversation between Pina and defendant violated the latter's constitutional rights, and such recording was therefore erroneously received in evidence. For the reasons stated below, we affirm.

On October 16, 1971, at approximately 10 p. m., Pina, his common-law wife, and his two minor brothers were arrested while at Disneyland for passing counterfeit notes. Pina and the others were taken to the Anaheim police station where they were advised of their rights and questioned by a Secret Service agent. They were held at Anaheim without bail or arraignment until October 17,

---

[*] The Honorable Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation.

1971. While there, Pina telephoned his friend, defendant Howell, and they discussed the trouble Pina and his family were in.

Later on October 17, 1971, Pina and the others who were arrested with him were transferred from Anaheim to the Federal Building in Los Angeles. On the following day, while still in custody and after being re-advised of his rights, Pina told Secret Service agents that Howell had supplied him with the counterfeit notes and executed a sworn statement to that effect. Pina also agreed to make a telephone call to Howell, to be monitored by the authorities. In the monitored call, which the authorities recorded, Howell corroborated Pina's statements and made further admissions regarding his own and Pina's counterfeiting activities.

Pina was arraigned and released later on October 18, 1971. The three others who had been arrested with him were also released on their own recognizance and the minors were handled through the probation department.

■ (1) Howell argues that the power of Congress under Article I, Section 8, Clause 6 of the Constitution to provide for the punishment of "counterfeiting" of the securities and current coin of the United States does not authorize Congress to provide for the punishment of those who transfer counterfeited obligations of the United States. Howell asserts that this latter power has been reserved to the states, citing Fox v. Ohio, 46 U.S. (5 How.) 410, 12 L.Ed. 213 (1847).

Fox v. Ohio brought into question the power of the State of Ohio to make it a state offense to pass as true and genuine counterfeit obligations of the United States in Ohio. The Supreme Court held that the state may do so and, in its opinion, at least implied that Article I, Section 8, Clause 6 of the Constitution does not empower Congress to make this a federal offense. But three years later, in United States v. Marigold, 50 U.S. (9 How.) 560, 13 L.Ed. 257 (1850), the Supreme Court, speaking through Mr. Justice Daniel, who had also written for the Court in Fox, held that Congress had the power to make such passing of counterfeit obligations a federal offense.

While adhering to the view expressed in Fox, that Section 8, Clause 6 of Article I did not give Congress this power, the Court held in Marigold that such power was derived from Section 8, Clause 5 of that Article. That clause gives the Congress power "[t]o coin Money, regulate the Value thereof, and of foreign Coin, and fix the Standard of Weights and Measures." The Court said:

"We trace both the offense and the authority to punish it to the power given by the Constitution to coin money, and to the correspondent and necessary power and obligation to protect and to preserve in its purity this constitutional currency for the benefit of the nation." 50 U.S., at 568.

Congress had power to enact 18 U.S.C. § 473.

(2) Howell contends, in effect, that Pina was not arraigned until about forty-one hours after his arrest at 10 p. m. on October 16, 1971, and that evidence obtained by the authorities from Pina during this pre-arraignment period of detention was therefore inadmissible in view of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and Rule 5(a), Fed.R.Crim.P. See also, Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957).

■ Pina was a witness at Howell's trial, but he was not a codefendant. In our opinion, Howell is without standing to complain of any violation of Pina's rights under McNabb and Rule 5(a). Where a seizure of evidence, however unlawful it may be with reference to the person from whom it was seized, invades no right of privacy of person or premises of another person, the latter has no standing to complain of the seizure as a ground for excluding the evidence. Wong Sun v. United States, 371 U.S. 471,

491–492, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We think the same principle applies with regard to violations of the *McNabb-Mallory* rule.[1]

■ (3) Howell claims that Pina was coerced into incriminating himself, citing Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). Again, Howell is without standing to raise this question.

(4) Howell contends that he was entrapped as a matter of law, citing Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932). Howell does not mean that he was entrapped into committing the offense, but that, after the offense was assertedly committed, he was entrapped into making incriminating statements over the telephone concerning the offense while the line was being monitored by Government agents.

■ The entrapment defense has to do with inducements offered by law enforcement officers to encourage the commission of a crime. *See* Lopez v. United States, 373 U.S. 427, 434, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963). Howell's contention has nothing to do with such an inducement and, in fact, the officers knew nothing of Howell's counterfeit activities until the offense had been committed.

(5) Howell's final point on appeal pertains to the action of the authorities in monitoring and recording Howell's telephone conversation with Pina. Pina agreed to let the authorities monitor this telephone call, but Howell argues that Pina's consent was not voluntary. Howell also argues: there is a serious question as to whether the information obtained by monitoring this call is accurate and reliable; "probably" either a court order or a search warrant should first have been obtained; a magistrate would probably have declined to issue such an order

or warrant for lack of probable cause; and 18 U.S.C. § 2511(2)(c), providing in part that it is not unlawful under the Omnibus Crime Control Act of 1968, 82 Stat. 214, to intercept a wire communication where one of the parties to the communication has given prior consent thereto, is violative of the Fourth, Fifth, Sixth and Ninth Amendments.

■ Whether the information obtained by monitoring this telephone call is accurate and reliable was decided adversely to Howell by the trier of fact. We have no basis for overturning that determination.

All of the other arguments advanced by Howell concerning the monitored telephone call are of no avail by reason of Pina's testimony, apparently accepted by Howell, that Pina made a preliminary telephone call to Howell in which Howell advised Pina to telephone him again, at a time when the Government would probably tap the line. According to Pina, Howell stated in this preliminary telephone conversation with Pina, that if Pina made such a monitored telephone call, and mentioned "the Federal Building," Howell would know that the conversation was being monitored, and he would relate a story designed to help Pina gain his release. In the monitored call Pina did mention "the Federal Building."

■ It therefore appears that Howell personally consented to talk to Pina on the telephone while the officers were listening in. This being true, we need not concern ourselves with whether Pina's consent to the monitoring was voluntary and whether Howell, in any event, has standing to raise that question. Nor need we reach any of the other grounds suggested by Howell, as summarized above, why the Government may not utilize the fruits of that telephone call.

Affirmed.

---

1. In any event, since Pina was given a full *Miranda* (Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) warning before making any incriminating statements, this operated to waive the requirements of Rule 5(a) and Mallory. United States v. Woods, 468 F.2d 1024 (9th Cir. 1972).