No. 12259

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

RANDALL G. BRADEN,

Defendant and Appellant.

---

Appeal from: District Court of the Eighth Judicial District, Honorable R. J. Nelson, Judge presiding.

Counsel of Record:

For Appellant:

John C. Hall appeared, Great Falls, Montana
L. D. Nybo argued, Great Falls, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana
J. C. Weingartner, Assistant Attorney General, argued, Helena, Montana
J. Fred Bourdeau argued, County Attorney, Great Falls, Montana
Neil E. Ugrin, Deputy County Attorney, Great Falls, Montana

---

Submitted: September 10, 1973

Decided: NOV 6 - 1973

Filed: NOV 6 - 1973

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal by defendant Randall G. Braden from a conviction of first degree murder entered in the district court of the eighth judicial district, Hon. R.J. Nelson, district judge presiding. Defendant was sentenced to life imprisonment in the Montana State Prison.

Appellant raises two issues on appeal:

1. Whether he has standing to challenge alleged violations of the constitutional rights of a witness who testified against him?

2. Whether the jury's lack of knowledge of the final disposition of cases pending against three of the state's witnesses prejudiced his case?

Braden had previously been convicted of the crime of robbery and was on parole at the time of the murder. At trial one of the principal witnesses was Thomas Tanner. Tanner testified he, Braden and John LaFond (the victim), were in Tanner's car driving aimlessly about while smoking marijuana and drinking beer. The trio proceeded into the country into an area known as the Spanish Coulee area and at a random point Tanner stopped the car in order to relieve himself. According to Tanner, Braden and Lafond began to quarrel about whether LaFond was an informer who had implicated Braden in a recent burglary. The three men proceeded through the barrow pit, crawled through a fence, and arrived at an embankment overlooking a small creek.

At that point Braden handed Tanner his weapon and directed Tanner to shoot LaFond. Tanner refused and handed the weapon back to Braden, who thereupon shot LaFond three times. Braden then directed Tanner to help him push LaFond into the creek. Braden and Tanner then returned to Great Falls, throwing the weapon into a river along the way.

Another state's witness, Michael Stillings, testified Braden told him that he, Braden, had killed LaFond. Stillings gave some details which tended to corroborate Tanner's version of the killing.

Marjorie Mann, another witness, testified that while she was incarcerated in jail at the same time as Stillings and Braden, Braden attempted to get Stillings to change his story to the effect that Braden had told Stillings that Tanner, not Braden, had committed the murder.

At the time of the murder Tanner was on parole from a sentence imposed as a result of a conviction of burglary. Testimony revealed that he was jailed for parole violation in late June or early July and at the time of his arrest he was a suspect in the LaFond homicide. Cross-examination of Tanner revealed he was held for a period of some 38 days, during which time he refused to make a statement about the LaFond killing. On August 13, 1971, he made the statement implicating Braden and was released from jail immediately thereafter. Tanner testified that he was visited daily during this period of time by sheriff's deputies or members of the county attorney's staff; that he did not have an attorney or the funds to employ one; and, that he was never taken before a magistrate or judge during this time.

There is nothing in the record to suggest the reasons for Tanner's incarceration for this period of time, other than what has been heretofore stated. It may be, as Braden suggests, that the authorities were applying coercive tactics to elicit Tanner's statement and subsequent testimony. It is just as likely that Tanner was seeking to plea bargain, i.e. trade his testimony for the consideration of not being charged as an accomplice in the crime. Section 95-1504(d), R.C.M. 1947 (formerly section 94-7206, R.C.M. 1947).

Braden's first contention is that the incarceration of Tanner was a violation of Tanner's constitutional rights and that he, Braden, should have standing to challenge that violation, thus excluding the testimony given by Tanner. We cannot agree. The

record discloses that Tanner's testimony was not challenged at trial. A well established rule in Montana is stated in Bower v. Tebbs, 132 Mont. 146, 160, 314 P.2d 731:

> "Objections which are urged for the first time
> on appeal will not be considered by this court."

See also: Teesdale v. Anschultz Drilling Co., 138 Mont. 427, 357 P.2d 4; Close v. Ruegsegger, 143 Mont. 32, 386 P.2d 739; Pickett v. Kyger, 151 Mont. 87, 439 P.2d 57; State v. Perkins, 153 Mont. 361, 457 P.2d 465, and cases cited therein.

However, assuming for the purposes of argument that Tanner's constitutional rights were violated, does Braden have the requisite standing to challenge testimony obtained in violation of Tanner's constitutional rights?

In his brief Braden asserts "a constitutional right independent of the Fourth and Fifth Amendments to be free from having testimony admitted against him in a criminal prosecution which has been coerced from some individual by law enforcement authorities."

A defendant does not have standing to challenge violations of Fourth Amendment rights of a codefendant or third party by law enforcement authorities. In Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L ed 2d 176, 185, 187, Justice White, speaking for six members of the Court, said:

> "This expansive reading of the Fourth Amendment
> and of the exclusionary rule fashioned to enforce
> it is admittedly inconsistent with prior cases, and
> we reject it. The established principle is that
> suppression of the product of a Fourth Amendment
> violation can be successfully urged only by those
> whose rights were violated by the search itself,
> not by those who are aggrieved solely by the intro-
> duction of damaging evidence. Coconspirators and
> codefendants have been accorded no special standing

> "* * *

> "But we are not convinced that the additional
> benefits of extending the exclusionary rule to
> other defendants would justify further encroachment
> upon the public interest in prosecuting those ac-
> cused of crime and having them acquitted or con-
> victed on the basis of all the evidence which exposes
> the truth."

The Ninth Circuit Court of Appeals follows the same rule with regard to both the Fourth and Fifth Amendments. Dearinger v. Rhay, 421 F.2d 1086; Byrd v. Comstock, 430 F.2d 937, cert.den. 401 U.S. 945, 91 S.Ct. 960, 28 L ed 2d 228; United States v. Pruitt, 464 F.2d 494; United States v. Howell, 470 F.2d 1064.

Justice White's reason for rejecting the expansion of the exclusionary rule as regards the Fourth Amendment is sound and the same rationale is applicable to Braden's contention. Such a rule also comports with precedent in Montana. State v. Geddes, 22 Mont. 68, 55 P. 919; State v. Dess, 154 Mont. 231, 462 P.2d 186, habeas corpus den. 312 F.Supp. 1325, aff'd, 450 F.2d 939; State v. Armstrong, 149 Mont. 470, 428 P.2d 611. Traditionally, the testimony of a coerced witness has been admitted on the ground that the coercion goes to the weight and credibility of the testimony, not to its exclusion. 3 Wigmore, Evidence §815 (Chadbourn rev. 1970), pp. 289, 290, and cases cited in footnote 3, p. 290.

For these reasons we reject Braden's contention and hold that Tanner's testimony, even on the assumption that it was coerced, does not violate Braden's constitutional rights.

Here, we note two recent cases, not cited to us by either party, that appear to be in conflict. In People v. Bradford, 10 Mich.App. 696, 160 N.W.2d 373, cert. den. 394 U.S. 1022, 89 S. Ct. 1638, 23 L ed 2d 48, habeas corpus granted, 354 F.Supp. 1331, aff'd, 476 F.2d 66, the Sixth Circuit Court of Appeals approved the granting of a writ of habeas corpus to an inmate convicted principally on the testimony of a brutally tortured witness. By way of contrast, in People v. Portelli, 15 N.Y.2d 235, 257 N.Y.S. 2d 931, 205 N.E.2d 857, remittitur amended, 16 N.Y.2d 537, 260 N.Y.S.2d 649, 208 N.E.2d 458, cert. den. 382 U.S. 1009, 86 S.Ct. 612, 15 L ed 2d 524, the New York Court of Appeals on essentially the same facts held that the testimony of the witness was admissible, going to the weight and credibility of the testimony only, and that no constitutional rights of defendant had been violated.

In the instant case we do not find the coercion set forth in the above cited two cases and base our holding here on the authority of Alderman.

Braden's second contention is that the three principal witnesses against him were all in jail for various crimes and that in return for favorable disposition of these charges the witnesses agreed to testify against him, Braden. He alleges the jury should have been made aware of the final disposition of the cases against these witnesses and since it was not, it could not properly weigh the credibility and veracity of the witnesses, hence Braden was prejudiced by the jury's lack of knowledge of these matters.

Appellant's contention is without merit because, as pointed out by the state, the jury was made aware of the facts that Tanner had twice been convicted of burglary, was in jail for parole violation, and was a drug user. The jury knew that Stillings had plead guilty to second degree murder and was in jail awaiting sentence, that he had committed burglary, and that he also was a drug user. It knew that Marjorie Mann had been convicted of grand larceny and was awaiting execution of her ten year sentence and that the county attorney had instituted proceedings to take custody of her child.

The record shows that these facts were disclosed to the jury primarily through the offices of a vigorous cross-examination conducted by appellant's counsel. Appellant's contention that had the jury known of the final disposition of the cases involving these witnesses it might have come to a different conclusion is untenable. Such knowledge is not relevant to the case the jury is called upon to decide. The jury had before it sufficient information to judge the credibility of the witnesses and it is apparent the jury chose to believe them.

The judgment of the district court is affirmed.

John Conway Harrison
Justice.

- 6 -

We Concur:

_James T. Harrison_
Chief Justice

_Neil S. Howell_

_Gene B. Daly_

_Wesley Castles_
Justices.