891 F.2d 894
 11 ITRD 1899, 58 USLW 2376, 8 Fed.
Cir. (T) 16
 ARJAY ASSOCIATES, INC., Intec Sales Company, Inc., Johnson
Plastics Equipment, Pinnacle Sales Company, Free Energy, Pro
Plastics Equipment, Inc., Sunbelt Plastics Equipment, Inc.,
Boston Plastics Machinery Co., and Aqua Poly Equipment
Company, Plaintiffs-Appellants,
v.
George BUSH, President, and The United States of America,
Defendants-Appellees,
Toshiba Machine Company, and Toshiba Machine Co. America, Defendants.
 No. 89-1311.
 United States Court of Appeals, Federal Circuit.
 Dec. 7, 1989.
 
 Robert B. McKay, Santora & McKay, New York City, argued for plaintiffs-appellants. With him on the brief was John F. Carney.
 David M. Cohen, Director, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., argued for defendants-appellees. With him on the brief were Stuart E. Schiffer, Acting Asst. Atty. Gen., and Velta A. Melnbrencis.
 Robert E. Branand, Robert Branand International, of Washington, D.C., represented amicus curiae Ad Hoc Coalition of Domestic Injection Molding Machine Manufacturers.
 Before MARKEY, Chief Judge, NEWMAN and ARCHER, Circuit Judges.
 MARKEY, Chief Judge.
 
 
 1
 Arjay Associates, Inc., Intec Sales Company, Inc., Johnson Plastics Equipment, Pinnacle Sales Company, Free Energy, Pro Plastics Equipment, Inc., Sunbelt Plastics Equipment, Inc., Boston Plastics Machinery Co., and Aqua Poly Equipment Company (collectively appellants) appeal from an order and judgment of the Court of International Trade, Arjay Assoc., Inc. v. Reagan, 707 F.Supp. 1346 (Ct. Int'l Trade 1989), dismissing the complaint because appellants lacked standing. We affirm.
 
 BACKGROUND
 Introduction
 
 2
 Toshiba Machine Company (TMC) and Kongsberg (a Norwegian corporation--not a party here) sold technologically advanced milling machines and computer equipment to the Soviet Union in violation of export controls promulgated by the Coordination Committee on Multilateral Export Controls (COCOM).[1] The Soviet Union purportedly used the machines to develop submarine propellers that make detection more difficult.
 
 
 3
 Appellants say they are "manufacturer representatives", selling in the United States products manufactured by TMC and imported by Toshiba Machine Company of America (TMCA).[2]
 
 
 4
 On August 23, 1988, Congress enacted the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, 102 Stat. 1107 (OTCA) to ensure that foreign companies comply with COCOM controls.[3] Section 2443(a) of the OTCA, entitled "Mandatory Sanctions Against Toshiba and Kongsberg", provides, in pertinent part, that:
 
 
 5
 The President shall impose, for a period of three years--
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 (2) a prohibition on the importation into the United States of all products produced by Toshiba Machine Company....
 
 
 9
 On December 27, 1988, the President issued Executive Order 12661 delegating implementation of the import ban on TMC products to the Secretary of the Treasury. On January 31, 1989, the Department of Treasury issued implementing regulations. 12 C.F.R. § 12.142(a); 54 Fed.Reg. 4780-82.[4]
 
 
 10
 Proceedings in the Court of International Trade
 
 
 11
 On November 8, 1988, appellants had filed a complaint alleging that section 2443 of OTCA violated the Constitution's provisions respecting bills of attainder, U.S. Const. art. 1, § 9, cl. 3, and deprivation of liberty or property without due process of law. U.S. Const. amend. V. The court dismissed the complaint on February 21, 1989, holding that appellants lacked standing. The court stated that appellants are not attainted and are not within the zone of interest of the bill of attainder clause, that they could not assert any right that might reside in TMC, and that TMC had expressly told the court it declined to assert any right it might have.
 
 ISSUE
 
 12
 Whether appellants have standing to bring this action.
 
 OPINION
 I. In General
 
 13
 The parties' arguments have obscured what this case is all about. Appellants seek a renewed importation of certain products. Their insurmountable obstacle, obscured here by semantic antics of lawyers, is that no one has a Congressionally untouchable right to the continued importation of any product.
 
 
 14
 It is beyond cavil that no one has a constitutional right to conduct foreign commerce in products excluded by Congress. United States v. 12 200-ft. Reels of Super 8mm. Film, 413 U.S. 123, 125, 93 S.Ct. 2665, 2667, 37 L.Ed.2d 500 (1973) (exclusion of obscene films not violation of First Amendment) ("The Constitution gives Congress broad, comprehensive powers '[t]o regulate Commerce with foreign Nations.' " (quoting art. I, § 8, cl. 3.)); Weber v. Freed, 239 U.S. 325, 329, 36 S.Ct. 131, 131-32, 60 L.Ed. 308 (1915) (exclusion of fight films not exercise of state powers by federal government); Brolan v. United States, 236 U.S. 216, 218, 35 S.Ct. 285, 285-86, 59 L.Ed. 544 (1915) (challenge to conviction regarding imported drugs on grounds Congress usurped police power is frivolous) ("Congress has exercised a plenary power in respect to the exclusion of merchandise brought from foreign countries...."); The Abby Dodge, 223 U.S. 166, 176-77, 32 S.Ct. 310, 313, 55 L.Ed. 390 (1912) ("Congress by an exertion of its power to regulate foreign commerce has the authority to forbid merchandise carried in such commerce from entering the United States.... [S]o complete is the authority of Congress over [foreign commerce] that no one can be said to have a vested right to carry on foreign commerce with the United States."); Buttfield v. Stranahan, 192 U.S. 470, 493, 24 S.Ct. 349, 354, 48 L.Ed. 525 (1904) ("As a result of the complete power of Congress over foreign commerce, it necessarily follows that no individual has a vested right to trade with foreign nations, which is so broad in character as to limit and restrict the power of Congress to determine what articles of merchandise may be imported into this country and the terms upon which a right to import may be exercised. This being true, it results that a statute which restrains the introduction of particular goods into the United States from considerations of public policy does not violate the due process clause of the Constitution."); United States v. Marigold, 50 U.S. (9 How.) 560, 566-67, 13 L.Ed. 257 (1850) (exclusion of counterfeit coins) ("[I]t can scarcely, at this day, be open to doubt, that every subject falling within the legitimate sphere of commercial regulation may be partially or wholly excluded, when either measure shall be demanded by the safety or by the important interests of the entire nation."); Authors League of America, Inc. v. Oman, 790 F.2d 220, 224 (2d Cir.1986) (exclusion of writing not violation of First or Fifth Amendments) ("It has long been established that the power to regulate commerce includes the power to partially or wholly exclude from importation any subject within the sphere of commerce when that measure is necessary to serve the interests of the nation.")[5] ; American Assoc. of Exporters and Importers v. United States, 751 F.2d 1239, 1250 (Fed.Cir.1985) ("No one has a protectable interest to engage in international trade."); Ganadera Indus., S.A. v. Block, 727 F.2d 1156, 1160 (D.C.Cir.1984) ("[Ganadera's] due process argument must fail because [Ganadera] has no constitutionally-protected right to import into the United States."); Continental Seafoods, Inc. v. Schweiker, 674 F.2d 38, 42 n. 11 (D.C.Cir.1982) ("Courts must defer to the expertise of the agency charged with exercising Congress' broad power to bar articles from import."); Daut v. United States, 405 F.2d 312, 315-16 (9th Cir.1968), cert. denied,402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971) ("The Supreme Court long ago held that Congress has plenary power to prohibit foreign importations including narcotics.").
 
 
 15
 The absence of a constitutional right has been recognized in relation to aspects of international trade other than exclusion from importation. See Japan Line, Ltd. v. County of Los Angeles, 441 U.S. 434, 448-49, 99 S.Ct. 1813, 1821-22, 60 L.Ed.2d 336 (1979); Board of Trustees of Univ. of Ill. v. United States, 289 U.S. 48, 57, 53 S.Ct. 509, 509-10, 77 L.Ed. 1025 (1933) (no violation of federalism in imposition of duty on state importation) ("The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted. No one can be said to have a vested right to carry on foreign commerce with the United States."); Norwegian Nitrogen Prods. Co. v. United States, 288 U.S. 294, 318, 53 S.Ct. 350, 359, 77 L.Ed. 796 (1933) ("No one has a legal right to the maintenance of an existing rate or duty."); North Am. Foreign Trading Corp. v. United States, 783 F.2d 1031, 1032 (Fed.Cir.1986) ("No vested right to a particular classification or rate of duty or preference is acquired at the time of importation."); United States v. Yoshida Int'l, Inc., 526 F.2d 560, 580, 63 C.C.P.A. 15 (1975); United States v. Zenith Radio Corp., 562 F.2d 1209, 1217, 64 C.C.P.A. 130 (1977), aff'd, 437 U.S. 443, 98 S.Ct. 2441, 57 L.Ed.2d 337 (1978) ("Not without reason has Congress refrained from spelling out either the precise criteria for determining what shall constitute a bounty or grant and what shall not, or the calculations to be followed in determining net amount. As this court said in Hammond Lead, [United States v. Hammond Lead Prods., 440 F.2d 1024, 58 C.C.P.A. 129, cert. denied, 404 U.S. 1005, 92 S.Ct. 565, 30 L.Ed.2d 558 (1971) ]: 'In the assessment of a countervailing duty, the determination that a bounty or grant is paid necessarily involves judgments in the political, legislative, or policy spheres,' 440 F.2d at 1030, 58 CCPA at 137, to which the court might well have added the eminently important economic sphere. Our nation's relationships in the world family are particularly sensitive to the assessment of the additional duties known as 'countervailing' duties. Such assessment is not just a means of protecting our producers, as Congress has recognized in refusing to require proof of injury before making such assessment; it is also one of the chips in a game played by governments on a world stage.").
 
 
 16
 Appellants cite not one court decision, and we are aware of none in the 200 years of our judicial history, which has upheld any right of persons in appellants' position to overturn a Congressional exclusion of any product from importation.
 
 II. Standing
 
 17
 "The term 'standing' subsumes a blend of constitutional requirements and prudential considerations...." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S.Ct. 752, 757-58, 70 L.Ed.2d 700 (1982). The constitutional limitations on federal judicial power in Article III require that the plaintiff allege a personal injury in fact caused by the challenged conduct and redressable by the court. Id. at 472, 102 S.Ct. at 758.
 
 
 18
 Appellants argue that the statute results in an economic injury to them (elimination of their opportunity to sell imported TMC products) and that that injury is redressable (by an injunction or declaration that section 2443 is unconstitutional). We hold that appellants lack standing because the injury they assert is to a nonexistent right to continued importation of a Congressionally excluded product and is thus nonredressable. Because appellants have no right to conduct foreign commerce in products excluded by Congress, they have in this case no right capable of judicial enforcement and have thus suffered no injury capable of judicial redress. See Railway Labor Executive Ass'n v. Dole, 760 F.2d 1021, 1023 (9th Cir.1985) (no standing to seek more inspectors when that would not prevent injury) ("Redressability, however, requires the court to examine whether 'the court has the power to right or to prevent the claimed injury.' " (quoting Gonzales v. Gorsuch, 688 F.2d 1263, 1267 (9th Cir.1982))). Thus appellants fail to meet the Constitutional requirements of standing.
 
 
 19
 The parties cite and discuss numerous cases dealing with the prudential requirements for standing to challenge governmental and agency action within the United States, not with a direct congressional exclusion from importation. In the particular case before us, an express import exclusion by Congress, the parties' discussion of domestic cases is rendered irrelevant by the clear absence of any right on which these appellants might found a challenge. They simply have no rock on which to stand. When the people granted Congress the power "To regulate Commerce with foreign Nations," U.S. Const. art. I, § 8, cl. 3, they thereupon relinquished at least whatever right they, as individuals, may have had to insist upon the importation of any product Congress has excluded. To say otherwise would be to render the grant of power to the Congress a nullity. That jurisprudential fact is made clear in the extended-for-emphasis citation of authority in section I above.
 
 
 20
 The concept of "no standing" as a barrier has over recent years been rendered anemic and only partially resuscitated, see Chayes, Public Law Litigation and the Burger Court, 96 Harv.L.Rev. 4, 10 (1982), and courts have deemed it necessary to address and discuss the merits of claims, including some clearly recognizable as unfounded, only to end by dismissing them on grounds such as failure to state a claim on which relief may be granted. Perhaps for that reason, the parties have fully and exhaustively briefed and argued appellants' assertions on due process, bill of attainder, and various aspects of the prudential requirements. Though, for reasons above stated, we deem it unnecessary to discuss at length those assertions, we state for the benefit of the parties that we have considered those assertions and found them unavailing.
 
 CONCLUSION
 
 21
 Because appellants have not even a colorable right to the continued importation of the excluded TMC products, and thus no standing to challenge either the exclusion set forth in section 2443 or the constitutionality thereof, the judgment of the Court of International Trade is affirmed.
 
 
 22
 AFFIRMED.
 
 
 23
 ARCHER, Circuit Judge, concurring.
 
 
 24
 The majority bases its decision on the theory that no one has a "Congressionally untouchable right to the continued importation of any product," an issue I do not believe needs to be reached. Appellants are not importers but claim only to be representatives in the sale in the United States of certain products of Toshiba Machine Company, Ltd. (TMC) which are imported by its subsidiary, Toshiba Machine Co. America (TMCA). They assert that section 2443 of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100-418, 102 Stat. 1107, which required the President to prohibit the importation into the United States of all products manufactured by TMC for a period of three years, is an unconstitutional Bill of Attainder and that they have been injured by its enactment.
 
 
 25
 I agree with the Court of International Trade's determination that the appellants lack standing to maintain this action. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324-25, 82 L.Ed.2d 556 (1984); Sacilor, Acieries et Laminoirs de Lorraine v. United States, 815 F.2d 1488, 1490 (Fed.Cir.), cert. denied, 484 U.S. 924, 108 S.Ct. 285, 98 L.Ed.2d 245 (1987). The appellants fail, for two separate reasons, to meet the prudential test required for standing. Firstly, they do not fall within the zone of interest sought to be protected by Art. 1, § 9, cl. 3 of the Constitution. See Association of Data Processing Serv. Organizations v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 829-30, 25 L.Ed.2d 184 (1970). Secondly, the appellants are not the "proper proponents of the particular legal rights on which they base their suit." Warth v. Seldin, 422 U.S. 490, 509-10, 95 S.Ct. 2197, 2210-11, 45 L.Ed.2d 343 (1975); Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 494, 87 L.Ed. 603 (1943); see also Singleton v. Wulff, 428 U.S. 106, 112, 96 S.Ct. 2868, 2873, 49 L.Ed.2d 826 (1976).
 
 
 26
 Art. 1, § 9, cl. 3 pertains only to the individuals or class of individuals who are actually identified by the alleged Bill of Attainder, in this case TMC. The appellants are not identified by section 2443 and do not have standing to assert the alleged constitutional rights of TMC which has intentionally remained a non-party to this action.
 
 
 
 [1]
 COCOM is an international agency created to prevent the acquisition of certain western technology by the Soviet Union and its allies. COCOM maintains a list of items, the sale of which its members agree will be restricted and controlled
 
 
 [2]
 In the trial court, appellants named TMC and TMCA as defendants though appellants sought no relief from them. The court granted the government's unopposed motion to dismiss TMC. TMCA cross-claimed against the government seeking "the same relief sought in the complaint." The court, in its opinion, dismissed TMCA's cross-claim. Neither TMC nor TMCA is a party to this appeal
 
 
 [3]
 Section 2442 sets forth Congressional findings:
 (1) The diversion of advanced military milling machinery to the Soviet Union by Toshiba Machine Company ... has had a serious impact on United States and Western security interests.
 (2) United States and Western security is undermined without the cooperation of the governments and nationals of all countries participating in [COCOM] in enforcing the COCOM agreement.
 (3) It is the responsibility of all governments participating in COCOM to place in effect strong national security export control laws, to license strategic exports carefully, and to enforce those export control laws strictly, since the COCOM system is only as strong as the national laws and enforcement on which it is based.
 (4) It is also important for corporations to implement effective internal control systems to ensure compliance with export laws.
 (5) In order to protect United States national security, the United States must take steps to ensure the compliance of foreign companies with COCOM controls, including, where necessary conditions have been met, the imposition of sanctions against violators of controls commensurate with severity of the violation.
 
 
 [4]
 Appellants argue here that they are merely challenging "agency action". In fact, the regulations merely make exceptions to the ban and the only agency action challenged here is the action mandated by the statute, i.e., the exclusion of TMC products from importation. Hence, appellants' attack is on the statute and is not a challenge to agency action such as found, e.g., in American Assoc. of Exporters and Importers v. United States, 751 F.2d 1239 (Fed.Cir.1985)
 
 
 [5]
 We read the quotes from Marigold and Oman as recognizing facts in the cases, not as suggesting that courts have authority to second-guess the Congress on whether an exclusion is "demanded by the safety or by the important interests of the entire nation" or is "necessary to serve the interests of the nation." The only limit on Congressional power to regulate foreign commerce is the Constitution. Buttfield, 192 U.S. at 492, 24 S.Ct. at 353-54