SLIP OP. 08-73
UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:   THE HONORABLE JANE A. RESTANI, CHIEF JUDGE
          THE HONORABLE DONALD C. POGUE, JUDGE
          THE HONORABLE JUDITH M. BARZILAY, JUDGE
------------------------------x
TOTES-ISOTONER CORPORATION,    :
                               :
          Plaintiff,           :
                               :
     v.                        :   Court No. 07-00001
                               :
                               :
UNITED STATES                  :
                               :
          Defendant.           :
------------------------------x


**OPINION**

[Defendant's motion to dismiss for lack of jurisdiction denied;
Defendant's motion to dismiss for failure to state a claim
granted.]


Dated: July 3, 2008

Neville Peterson, LLP (John M. Peterson, Curtis W. Knauss, Matthew
G. Shaw, and Michael T. Cone)for the Plaintiff.

Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E.
Davidson, Director, Patricia M. McCarthy, Assistant Director,
Commercial Litigation Branch, Civil Division, U.S. Department of
Justice (Reginald T. Blades, Jr.); Aimee Lee and Gardner B. Miller,
Attorneys, International Trade Field Office, U.S. Department of
Justice for Defendant United States.

**Pogue, Judge:** In this action, Plaintiff, Totes-Isotoner
Corporation ("Totes"), a U.S. importer of men's gloves, challenges
the constitutionality of the tariff rate imposed on its imports.
Totes claims that by setting out different tariff rates for certain
"Men's" gloves and other gloves, the Tariff Schedule violates
Totes' right to equal protection under the law because it
discriminates on the basis of gender and/or age.

The Defendant United States asks the Court to dismiss Totes' complaint, claiming that the Court does not have jurisdiction over this matter for two reasons: (1)the Complaint presents a non-justiciable political question; and (2)the Plaintiff does not have a sufficient stake in the matter so as to possess standing to bring this equal protection claim. USCIT Rule 12(b)(1). In the alternative, the government also seeks dismissal under USCIT Rule 12(b)(5), asserting that Totes' pleadings fail to state a claim upon which relief can be granted.

Because the Court concludes that Totes' equal protection claims properly invoke the Court's traditional role of--and standards for--constitutional review, and that Totes has standing to bring its claims, the Court denies Defendant's motion to dismiss for lack of jurisdiction. However, because Plaintiff's Complaint does not plead sufficient facts to state a claim of unconstitutional discrimination, the Court dismisses this matter, without prejudice, pursuant to Rule 12(b)(5).

The Court exercises jurisdiction, pursuant to 28 U.S.C. § 1581(i)(1), which grants to the court exclusive jurisdiction over actions arising out of a law of the United States which provides for "revenue from imports."

**Discussion**

The Court will discuss, in turn, each of the stated bases for the government's motion to dismiss: 1. The Political Question Doctrine; 2. The Alleged Lack of Constitutional and Prudential Standing; and 3. Totes' Failure to State a Claim.

**I. The Political Question Doctrine**

In its Complaint, which the government would have us dismiss,

Totes pleads that the government classifies "Men's" leather gloves in subheading 4203.2930, of the Harmonized Tariff Schedule of the United States ("HTSUS"),[1] at a duty rate of 14 percent ad valorem, whereas gloves "[f]or other persons" are classified under subheading 4203.2940, HTSUS,[2] at the lower duty rate of 12.6 percent ad valorem.[3] Totes alleges that these provisions of the HTSUS "discriminate on the basis of gender or age," Complaint at 1, in violation of the Constitution's Equal Protection guarantee. U.S. CONST. amend. XIV, § 1, cl. 2("[N]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.").[4] Accordingly, the Complaint challenges the extent to

---

[1] 4203.2930, HTSUS includes subheadings for both lined and unlined gloves. 4203.29.3010, HTSUS includes "Articles of apparel and clothing accessories, of leather or of composition leather: Gloves, mittens and mitts: Other: Other: Other: Men's . . . Not lined." 4203.29.3020, HTSUS includes "Articles of apparel and clothing accessories, of leather or of composition leather: Gloves, mittens and mitts: Other: Other: Other: Men's . . . Lined."

[2] 4203.2950, HTSUS includes "Articles of apparel and clothing accessories, of leather or of composition leather: Gloves, mittens and mitts: Other: Other: Other: For other persons . . . Lined."

[3] For purposes of the Court's standing determination, the government does not contest the factual allegations in Totes' Complaint.

[4] Although Totes bases its claim on an alleged violation of the Fifth Amendment, which provides that no person shall be deprived of life, liberty, or property, without due process of law, the analysis is the same as that for claims brought under the equal protection clause of the Fourteenth Amendment. Bolling v. Sharpe, 347 U.S. 497, 500 (1954) ("In view of our decision that the Constitution prohibits the states from maintaining racially segregated public schools, it would be unthinkable that the same Constitution would impose a lesser duty on the Federal Government. We hold that racial segregation in the public schools of the District of Columbia is a denial of the due

(continued...)

which the government may use gender in the classification of goods for importation.

Nonetheless, the government argues that this Complaint raises a non-justiciable political question. As noted above, however, in the Court's view, the Complaint seeks review of specific statutory provisions using traditional constitutional equal protection standards that have long been interpreted and applied by the judicial branch. As such, Totes' claim does not intrude into the non-judicial domain.

The political question doctrine, recognizing our constitutional separation of powers principle, does exclude some disputes from judicial determination. Under this doctrine, a subject matter is not appropriate for judicial resolution where it is exclusively assigned to the political branches or where such branches are better-suited than the judicial branch to determine the matter. See Baker v. Carr, 369 U.S. 186, 211 (1962);[5] Japan

---

[4](...continued)
process of law guaranteed by the Fifth Amendment to the Constitution." (footnote omitted)); Washington v. Davis, 426 U.S. 229, 239 (1976)("[T]he Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups." (citation omitted)). Therefore, the Court applies cases relating to the two amendments in its analysis.

[5] Baker identified six characteristics of cases found inappropriate for judicial consideration under the political question doctrine.

> Prominent on the surface of any case held to involve a political question is found [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due

(continued...)

Whaling Ass'n v. Am. Cetacean Soc'y, 478 U.S. 221, 230 (1986) ("The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch. The Judiciary is particularly ill suited to make such decisions, as 'courts are fundamentally underequipped to formulate national policies or develop standards for matters not legal in nature.'" (quoting United States ex rel. Joseph v. Cannon, 642 F.2d 1373, 1379 (1981)(footnote omitted), cert. denied, 455 U.S. 999 (1982))).

Invoking this doctrine, the government asserts that the subject matter of Plaintiff's Complaint--the use of gender in tariff classifications--is not appropriate for judicial resolution because it involves issues of trade policy reserved to the political branches. Specifically, the government argues that the formation and adoption of the tariff provisions at issue here involve the negotiation of agreements with foreign governments and that Plaintiff's claim challenges the substance of those international trade agreements. The government argues that there are no judicially manageable standards for reviewing the results of these international trade agreements. To the government, "[w]hether the rates provided in the Harmonized Tariff Schedule should be equalized with regard to products classified based upon gender or age related characteristics is a political question that the Court should decline to adjudicate." Def.'s Mot. to Dismiss, at 14.

Plaintiff properly replies that the specific provisions of the

---

[5](...continued)
coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.
Baker, 369 U.S. at 217. The government relies primarily on the first two characteristics.

HTSUS constitute statutes enacted by Congress pursuant to Section 1204(c) of the Omnibus Trade and Competitiveness Act of 1988.[6] 19 U.S.C. § 3004(c). Citing this statutory structure, Plaintiff reasons that its Complaint is a garden-variety equal protection claim challenging the statute imposing tariffs and in no way implicates the negotiation of international agreements that may precede statutory enactment. Rather than intrude in areas delegated to the executive or legislative branch, Plaintiff claims that its Complaint invokes traditional constitutional equal protection standards readily subject to judicial administration.

In support of its argument, Plaintiff invokes the Supreme Court's analysis in Japan Whaling, which explains that:

> [N]ot every matter touching on politics is a political question . . . and more specifically, that it is "error to suppose that every case or controversy which touches foreign relations lies beyond judicial cognizance." . . .
>      As Baker plainly held, [] the courts have the authority to construe treaties and executive agreements, and it goes without saying that interpreting congressional legislation is a recurring and accepted task for the federal courts. . . . We are cognizant of the interplay between these Amendments and the conduct of this Nation's foreign relations, and we recognize the premier role which both Congress and the Executive play in this field. But under the Constitution, one of the Judiciary's characteristic roles is to interpret statutes, and we cannot shirk this responsibility merely because our decision may have significant political overtones.

Japan Whaling, 478 U.S. at 229-30 (quoting Baker, 369 U.S. at 211).[7]

---

[6] Further citations to the 1988 Act are to relevant provisions in Title 19 of the U.S. Code, 2000 edition.

[7] For a more extensive discussion of Japan Whaling's holding with regard to the political question doctrine, see Canadian Lumber Trade Alliance v. United States, 425 F. Supp. 2d 1321, 1355-56 (2006).

The Supreme Court's admonition in <u>Japan Whaling</u> is directly applicable here. In the case before us, even if the challenged statutory provisions originated in international negotiations, those provisions have since been enacted into law as the HTSUS. Thus, this Complaint does not challenge the actions of the President or Congress in their respective spheres of responsibility for foreign commerce or foreign relations. Rather, it involves constitutional review of a domestic statute. It has long been the role of the court to adjudicate legislative classifications in view of the importance of the governmental interests involved. <u>See</u> <u>United States v. Carolene Products Co.</u>, 304 U.S. 144, 153 (1938)("Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry, . . . and the constitutionality of a statute predicated upon the existence of a particular state of facts may be challenged by showing to the court that those facts have ceased to exist."(citations omitted)). In the light of this history and precedent, it is clear that review of statutory provisions, using constitutional standards, is manifestly within the judicial realm. Such review is, if anything, more appropriate here than in <u>Japan Whaling</u>, which involved evaluation of the Japanese whaling industry, a matter even more removed from the domestic realm than that at issue here.

Thus, Totes' challenge to the discriminatory operation of the HTSUS properly invokes the Court's traditional role of--and standards for--constitutional review. Therefore, the Court denies the government's request that Totes' Complaint be dismissed under the political question doctrine.[8]

---

[8] Although the government also argues that Totes' Complaint should be viewed as raising a political question because the

(continued...)

**II. Standing**

**A. Constitutional Standing**

Because federal judicial jurisdiction arises from the Constitution, in order to bring its case here, Totes must demonstrate that its claim qualifies as a "case" or "controversy" for purposes of Article III of the Constitution, and specifically that it has a sufficient stake in the matter to establish its "standing" to bring its claim.  Canadian Lumber Trade Alliance v. United States, 517 F.3d 1319, 1331 (Fed. Cir. 2008)("There is no case or controversy within the meaning of the Constitution unless the plaintiff has standing.").

To establish a sufficient stake for purposes of Article III standing, plaintiffs must demonstrate: (1)that they have suffered some injury-in-fact; (2)that there is a causal connection between the defendant's conduct and this injury-in-fact; and (3) that this injury is redressable by the court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)("Defenders of Wildlife")(citations omitted).[9]

---

[8](...continued)
relief Totes' seeks would raise the "potential for embarrassment from multifarious pronouncements and [contrary to the] need for adherence to [a] political decision," the judiciary's application of the constitutional parameters for gender and age discrimination to tariff classifications should produce no more than one clear determination.  Nor would the remedy Totes seeks require the government to raise duties on gloves for other persons in violation of any international trade agreement; just the contrary.  Totes seeks a reduction not an increase in the allegedly discriminatory rates.  Accordingly, this litigation does not raise the alternative concern advanced by the government.

[9] Because Totes claims a violation of the Constitution's Equal Protection guarantee, we need not be diverted by the government's citation of the absence of a substantive Due Process
(continued...)

We consider, in order, each prong of the Defenders of Wildlife test.  First, as noted above, Totes' Complaint alleges that the government has assessed and Totes has paid customs duties at the 14 percent rate. Complaint at 2.  Thus, Totes alleges that it has suffered an injury in fact--the loss of money. Second, Totes also alleges that this injury is a result of--or caused by--the government's allegedly discriminatory tariff rates.  Finally, to the extent this rate is unconstitutionally discriminatory, Totes seeks restoration, with interest, of any excess duty paid. Complaint at 7.  Thus, Totes seeks redress in the form of a return of the excess tariffs imposed.  Grant of this redress is manifestly within the historic power of this Court, see, e.g., United States v. U.S. Shoe Corp., 523 U.S. 360, 365-66 (1998)(affirming the CIT's conclusion that the Harbor Maintenance Tax is unconstitutional and that duties collected pursuant to the tax must be refunded), and is the requested and likely outcome of this action were Totes to prevail. See Litecubes, LLC v. Northern Light Products, Inc., 523 F.3d 1353, 1360 (Fed. Cir. 2008)("Subject matter jurisdiction does not fail simply because the plaintiff might be unable to ultimately

---

[9](...continued)
right of importation, see Arjay Associates, Inc. v. Bush, 891 F.2d 894, 896 (Fed. Cir. 1989)("[N]o one has a constitutional right to conduct foreign commerce in products excluded by Congress"), as compared to recognition of a procedural Due Process right. See NEC Corp. v. United States, 151 F.3d 1361, 1370-71 (Fed. Cir. 1998).  "[E]ven though a person has no 'right' to a valuable governmental benefit," the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests."  Perry v. Sindermann, 408 U.S. 593, 597 (1972).  Because Totes has alleged that the challenged tariff rates infringe upon its interests by unconstitutionally discriminating on the basis of gender, the government's assertion that Totes has no vested right to import is irrelevant to the analysis of Totes' standing and to the claims upon which that standing is based.

succeed on the merits." (citation omitted)). Accordingly, Totes' allegations provide a sufficient basis to establish Totes' constitutional standing to bring its claim.

Despite the fact that Totes has paid the allegedly discriminatory tariff rates, the government argues that Totes' injury is too indirect to permit standing here. To the government, because the tax imposed by the tariff provision must be paid by all importers of men's leather gloves, Totes pays the same tariff as other similarly situated importers, and is therefore not subject to discriminatory treatment. But there is no obligation requiring a plaintiff challenging an allegedly express suspect governmental classification to plead and prove the existence of a similarly-situated non-protected class. Brown v. City of Oneonta, 221 F.3d 329, 337 (2d Cir. 2000)("Plaintiffs are correct, however, that it is not necessary to plead the existence of a similarly situated non-minority group when challenging a law or policy that contains an express, racial classification."), overruled in part on other grounds by Gonzaga Univ. v. Doe, 536 U.S. 273 (2002).

The government also argues that the tariff rates challenged here tax products, not people, and that therefore Totes is not itself the object of any prohibited discrimination. This issue, however, was addressed in Craig v. Boren, where a beer vendor was allowed by the Supreme Court to pursue the equal protection claims of 18-21 year old males against the relevant statute which permitted beer purchases by 18-21 year old females. Craig v. Boren, 429 U.S. 190, 194-7 (1976). "[W]here a person is effectively used by the government to implement a discriminatory scheme," he may invoke the rights of the infringed to challenge that scheme. Fraternal Order of Police v. United States, 152 F.3d 998, 1002 (D.C. Cir. 1998). If anything, Totes' role as payor of the allegedly discriminatory tax makes its standing here more directly connected to that scheme than the interest of the beer

vendor found sufficient in <u>Craig</u>.[10]

**B. Prudential Standing**

In addition to challenging Totes' constitutional standing to bring this case, the government also argues that Totes lacks standing for "prudential" reasons. <u>See</u> <u>Clarke v. Sec. Indus. Ass'n</u>, 479 U.S. 388, 396 (1986)("'[T]he interest sought to be protected by the complainant [must be] arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" (quoting <u>Ass'n of Data Processing Serv. Org., Inc. v. Camp</u>, 397 U.S. 150, 153 (1970))).  This "zone of interest" requirement "denies a right of review if the plaintiff's interests are [] marginally related to or inconsistent with the purposes implicit" in the constitutional guarantee invoked.  <u>Clarke</u>, 479 U.S. at 399.

The Supreme Court has further maintained that the "zone of interest" test operates under the presumption that agency actions are subject to judicial review, and therefore, the test "is not meant to be especially demanding; in particular, there need be no

---

[10]Although Totes' claim that the Constitution "prohibits the defendant from discriminating in the assessment of taxes or duties on the basis of gender or age," (Complaint at 5), could give rise to further analysis of Totes' possible third-party standing on behalf of adult male purchasers of gloves, Totes expressly indicated at oral argument that it does not seek derivative or third-party standing such as that recognized by <u>Craig</u> or <u>Powers v. Ohio</u>, 499 U.S. 400 (1991).  It is therefore unnecessary to determine whether Totes' allegations would indicate that "enforcement of the challenged [provision] . . . would result indirectly in the violation of third parties' rights." <u>Craig</u>, 429 U.S. at 195 (quoting <u>Warth v. Seldin</u>, 422 U.S. 490, 510 (1975)); <u>see also</u> <u>Craig</u>, 429 U.S. at 196 ("[C]rucial to the decision to permit <u>jus tertii</u> standing [is] the recognition of 'the impact of the litigation on the third-party interests.'" (quoting <u>Eisenstadt v. Baird</u>, 405 U.S. 438, 445 (1972))).

indication of congressional purpose to benefit the would-be plaintiff." Clarke, 479 U.S. at 399-400 (citation and footnote omitted); see also Nat'l Credit Union Admin. v. First Nat'l Bank & Trust Co., 522 U.S. 479, 488-9 (1998)("Although our prior cases have not stated a clear rule for determining when a plaintiff's interest is 'arguably within the zone of interests' to be protected by a statute, they nonetheless establish that we should not inquire whether there has been a congressional intent to benefit the would-be plaintiff."). Rather, the zone of interest test only "denies a right of review if the plaintiff's interests are [] marginally related to or inconsistent with the purposes implicit in the statute . . . ." Clarke, 479 U.S. at 399; see also Kemet Elecs. Corp. v. Barshefsky, 21 CIT 912, 927-28, 976 F. Supp. 1012, 1026 (1997)(citing Clarke).

The constitutional equal protection guarantee at issue in this case clearly protects against discrimination on the basis of sex. Craig v. Boren, 429 U.S. at 197. Because Totes alleges that its injury is the direct result of prohibited discrimination, which is both facial and express, Totes' claim is not "marginally related to or inconsistent with the purposes" of the equal protection clause.

Accordingly, because Totes' claim, as alleged, is within the zone of interests protected by the Constitution's Equal Protection guarantee, there is no prudential reason to deny Totes standing to litigate its claim.

### III. Failure to State a Claim

We turn now to the adequacy of Totes' factual pleadings, explaining why Totes' Complaint, as presently drafted, fails to "show" the necessary entitlement to relief.

As noted above, Totes' Complaint alleges a prohibited governmental classification "based on sex." The applicable pleading

requirements, however, as set out in Fed. R. Civ. P. 8(a), and recently explained by the Supreme Court in Bell Atl. Corp. v. Twombly,___ U.S. ___, 127 S. Ct. 1955, 1964 (2007)("Bell Atlantic"), mandate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic, 127 S. Ct. at 1964-65 (citation omitted). While it is not necessary for a plaintiff to provide detailed factual allegations, the factual allegations asserted must still be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 1965 (citation omitted).[11] In so doing, a plaintiff must still provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id. at 1964 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)).[12]

While the contours of this requirement have not yet been broadly addressed by the Federal Circuit, other circuits have considered the issue. The Second Circuit, for example, has interpreted Bell Atlantic as "requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58

---

[11]In Bell Atlantic, the Court disavowed the oft-cited standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Bell Atlantic, supra, 127 S. Ct. at 1959-60.

[12] The Federal Circuit has indicated that Bell Atlantic does not alter notice pleading as a requirement or practice. McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1357-8 (Fed. Cir. 2007)(discussing the "low bar" for pro se plaintiffs).

(2d Cir. 2007)(emphasis omitted).  As the Third Circuit has explained, "there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation." Phillips v. County of Allegheny, 515 F.3d 224, 234-5 (3d Cir. 2008).

Here, we must apply Bell Atlantic's pleading requirement to Totes' equal protection claim.  In order to state such a claim for violation of the equal protection clause based on gender, Totes must allege that the government has engaged in gender-based discrimination without an exceedingly persuasive justification, or in other words, that the government has used discriminatory means that are not substantially related to important governmental objectives. United States v. Virginia, 518 U.S. 515, 532-33 (1996); Craig v. Boren, 429 U.S. at 197 (1971)("To withstand constitutional challenge . . . classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.").[13]  In so doing, Totes' complaint must include a factual allegation that demonstrates a governmental purpose to discriminate.  Washington v. Davis, 426 U.S. 229, 242 (1976)(noting that "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts . . .").  Whether the prohibited discrimination is overt or covert, Personnel Adm'r of Mass. v. Feeney, 442 U.S. 256, 273 (1979), Totes' Complaint must allege facts sufficient to "show" some purpose or intent to disfavor individuals because of their sex, though such purpose or intent need not be malicious.  Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 270-1 (1993).  In Bray, the Court stated:

---

[13] Because the pleading requirements for invidious discrimination based on age are not less than for such discrimination based on sex, Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83 (2000)("States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."), we need not discuss them separately.

> We do not think that the "animus" requirement can be met only by maliciously motivated, as opposed to assertedly benign (though objectively invidious), discrimination against women. It does demand, however, at least a purpose that focuses upon women by reason of their sex- for example (to use an illustration of assertedly benign discrimination), the purpose of "saving" women because they are women from a combative, aggressive profession such as the practice of law. . . .
>    . . . Some activities may be such an irrational object of disfavor that, if they are targeted, and if they also happen to be engaged in exclusively or predominantly by a particular class of people, an intent to disfavor that class can readily be presumed. A tax on wearing yarmulkes is a tax on Jews.

Id. at 269-70 (emphasis omitted).

A facial or express gender-based classification may, of course, indicate a discriminatory purpose, see, e.g., Cmtys. for Equity v. Mich. High Sch. Athletic Ass'n, 459 F.3d 676, 694 (6th Cir. 2006)("Disparate treatment based upon facially gender-based classifications evidences an intent to treat the two groups differently"), and Totes' Complaint does allege the express use of gender in the tariff classification scheme. The Complaint, however, does not allege discrimination "based on" gender, i.e., that the duty or tax imposed by the tariff classification, or any burden resulting from that tax, is imposed because of or based on gender or otherwise disfavors individuals because of their gender. Thus, the Complaint does not allege sufficient facts to establish that the government has engaged in gender-based discrimination. This is because the tariff provisions that Totes challenges are not "actual use" provisions, i.e., the tariff provisions at issue do not require that the imported goods be actually sold to or used by people of one sex or of some age category.[14]

---

[14] Rather, the challenged classifications indicate "chief" or "principal" use, and it is well established that where
(continued...)

To classify imports as men's gloves, or gloves "for other persons" does not establish that they will be bought by or used by men, or that men will necessarily pay the allegedly discriminatory tax. "For" is used to indicate objective. Thus the mere allegation that the HTSUS classifies or labels goods as imported "for" persons of one sex does not establish that those classifications are "on the basis of" or "by" gender. "On the basis of" indicates foundation or fundamental element rather than objective. As the Supreme Court explained in <u>Allegheny Pittsburgh Coal Co. v. County Comm'n of Webster Country, W. Va.</u>, 488 U.S. 336, 343 (1989), "[t]he Equal Protection Clause applies only to taxation <u>which in fact bears</u> unequally on persons or property of the same class." (internal quotations omitted)(emphasis added).[15]

According to Totes' Complaint, by distinguishing between men's gloves and gloves for women, the HTSUS distinguishes between property of the same class (leather gloves), and this discrimination is made on the basis of the gender and/or age of the intended user. Pl.'s Resp. to Def.'s Mot. to Dismiss 38 ("<u>Pl.'s Br.</u>"). But the facts alleged--merely "distinguishing" between gloves for men and gloves for other persons--are not sufficient to show discrimination

---

[14](...continued)
classification is proper under the doctrine of chief (now principal) use, there must be proof of such use. <u>Advance Solvents & Chemical Corp. v. United States</u>, 34 CCPA 148, 151 (1947).

[15] <u>Allegheny Pittsburgh Coal</u> involved the implementation of state law, and the different methods used to assess property values for recently-purchased properties as opposed to property held for a longer time. Recognizing that a State "may divide different kinds of property into classes and assign to each class a different tax burden," the Court applied a low level of scrutiny, explaining that the state's ability to assign these different tax burdens existed "so long as those divisions and burdens are reasonable." <u>Allegheny Pittsburgh Coal</u>, 488 U.S. at 344 (citing <u>Allied Stores of Ohio v. Bowers</u>, 358 U.S. 522, 526-27 (1959)("<u>Bowers</u>")).

"on the basis of" sex.[16]  Moreover, the discrimination alleged in Totes's Complaint, results from the imposition of the duty, or tax, imposed by the tariff classifications. Complaint at 6. But, as alleged in the Complaint, that duty or tax falls on importers, and there is no factual indication in the Complaint that the classification results in a discriminatory application of the tax.[17] Therefore, Totes' additional allegation of discrimination "on the basis of sex" is simply conclusory, in violation of the <u>Bell Atlantic</u> requirement.  <u>See also</u> <u>Judge v. City of Lowell</u>, 160 F.3d 67, 75 (1st Cir. 1998) (requiring "*specific, nonconclusory factual* allegations giving rise to a reasonable inference of racially discriminatory intent").  After <u>Bell Atlantic</u>, it appears that the Plaintiff is required to allege facts that could provide a showing that Totes is entitled to relief.

To be clear, were this a facially discriminatory tax, Plaintiff's pleadings could be sufficient; in addition, we do not ignore the fact that the tariff schedule makes an express reference to gender.  Nor do we assume that this express reference is necessarily benign.  Nonetheless, because the challenged tariff classifications are, at worst, "in between" classifications that impose a facially discriminatory tax and classifications that are not facially discriminatory, Plaintiff must at least include an

---

[16] Totes agrees, for example, that it would not be gender-based discrimination for the government to "classify" goods for statistical purposes on the basis of the gender of the intended wearer of those goods.

[17] <u>Cf</u>. <u>Engquist v. Oregon Dept. of Agriculture</u>, ___U.S.___, 2008 WL 2329768 at *6 (June 9, 2008)("Our equal protection jurisprudence has typically been concerned with governmental classifications that 'affect some groups of citizens differently than others.'" (quoting <u>McGowan v. Maryland</u>, 366 U.S. 420, 425 (1961))).  Nor can Plaintiff claim that the alleged discrimination affects importers differently based on gender. Rather, the tariff classifications affect importers based on the goods they import.

allegation that the challenged tariff classifications distribute the burdens of the tax rate imposed in a way that disadvantages one sex as a whole, or has a disproportionate impact based on sex.  To the extent that the challenged tariff provisions do not impose a facially discriminatory tax, Plaintiff must include an allegation of some intent that renders plausible the claim that the discrimination at issue is invidious, arbitrary or unreasonable.[18] In the absence of such allegations, the Complaint does not provide "plausible grounds to infer" a violation of equal protection or allege "enough fact to raise a reasonable expectation that discovery [or further proceedings on the merits] will reveal evidence of illegal" conduct.  Bell Atlantic, 127 S. Ct. at 1965. While classification of goods as "for" men--or for other persons--may suggest discrimination, it does not "show" it.  As pleaded, we simply are not informed of a discriminatory purpose or intent or of the character of the discrimination that Totes seeks to remedy.  We are left to hypothesize: Is the challenged discrimination based on the baggage of sexual stereotypes?  Does it unconstitutionally distribute the benefits and burdens of taxation?  Is it prohibited intentional discrimination?  Because the Complaint, as presently stated, does not "show" what the basis of Totes' entitlement is, it must be dismissed, without prejudice, for failure to state a claim.


                                         /s/Donald C. Pogue
                                        Donald C. Pogue, Judge


Dated: July 3, 2008
       New York, N.Y.

-------------------------------------------------------------------

    [18] Cf. Mfrs. Hanover Trust Co. v. United States, 775 F.2d 459, 465 (2d Cir. 1985) (examining whether gender-based mortality tables used in calculating an estate's tax obligations were "invidious" by examining their "(1) aggregate impact on [the] class; (2) demeaning generalizations; (3)stereotyped assumptions; and (4)flawed use of statistics").

**ERRATA**


**Slip Op. 08-73, issued July 3, 2008**

*Totes-Isotoner Corp. v. United States*


Please replace the preliminary paragraph identifying the counsel for the Defendant with:

Gregory G. Katsas, Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Reginald T. Blades, Jr., Aimee Lee, David S. Silverbrand and Gardner B. Miller)and, of counsel, Yelena Slepak, Office of Assistant Chief Counsel, U.S. Customs and Border Protection and Elizabeth Baltzan, Office of General Counsel, United States Trade Representative, for Defendant United States.